# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 00-2576EM, 00-2650EM, 00-2785EM, 00-2786EM, 00-2931EM

_____

|  |  |  |
|---|---|---|
| _____ | * | |
| | * | |
| No. 00-2576EM | * | |
| _____ | * | |
| | * | |
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| | * | |
| Monroe Evans, also known as Ty, | * | On Appeal from the United |
| also known as Daddy, | * | States District Court |
| | * | for the Eastern District |
| Appellant. | * | of Missouri. |
| | * | |
| _____ | * | |
| | * | |
| No. 00-2650EM | * | |
| _____ | * | |
| | * | |
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| | * | |

Derry Evans, also known as Bujie,    *
also known as Boogie, also known as    *
Darnell Washington, also known as    *
Shon Perry,    *
   *
       Appellant.    *
   *
   *
     _____    *
   *
     No. 00-2785EM    *
     _____    *
   *
United States of America,    *
   *
       Appellee,    *    On Appeal from the United
   *    States District Court
     v.    *    for the Eastern District
   *    of Missouri.
   *
Terrance Roberts, also known as Terry,    *
also known as Terrance Evans,    *
   *
       Appellant.    *
   *
   *
     _____    *
   *
     No. 00-2786EM    *
     _____    *
   *
United States of America,    *
   *
       Appellee,    *
   *
     v.    *
   *
   *

Clem Evans, also known as Big Clem,     *
also known as Clem L.,     *
   *
       Appellant.     *
   *
   *
   *
     _____     *
   *
       No. 00-2931EM     *
     _____     *
   *
United States of America,     *
   *
       Appellee,     *
   *
     v.     *
   *
   *
Johnny Lee Evans, also known as     *
Jerome, also known as Bunny,     *
   *
       Appellant.     *

_____

Submitted: September 11, 2001

Filed: November 27, 2001

_____

Before LOKEN, RICHARD S. ARNOLD, and FAGG, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Appellants Derry Evans, Terrance Roberts, Monroe Evans, Clem Evans, and Johnny Lee Evans appeal their convictions of multiple counts relating to transporting individuals in interstate commerce for prostitution in violation of the Mann Act, 18 U.S.C. §§ 2421–2423, money laundering, 18 U.S.C. § 1956, and conspiracy to

-3-

commit those offenses. The most substantial arguments that they raise on appeal concern: (1) whether a juror provided adequate assurance of his impartiality; (2) whether an incorrect jury instruction on money laundering—that omitted the need to find an effect on interstate commerce—requires reversal; (3) whether the District Court's general "knowledge" instruction conflicted with the Court's specific "knowledge" instruction under the money-laundering statute; and (4) whether there was sufficient evidence to support the conviction of Derry Evans for conspiracy to launder money.

For the reasons that follow, we affirm the convictions and sentences of Derry Evans, Terrance Roberts, and Johnny Lee Evans in their entirety. We also affirm the convictions of Monroe Evans and Clem Evans. Regarding those two defendants, however, we reverse for resentencing with respect to the counts for which, both sides agree, they were sentenced in violation of the Ex Post Facto Clause. For those defendants, we remand the case to the District Court for further proceedings.

## I. Background

The defendants were convicted of being part of an interstate conspiracy—based in Minneapolis, Minnesota—involving the recruitment, transportation, control, and abuse of prostitutes. The conspiracy began in the early 1980s and lasted until the time of the defendants' arrest. The defendants are all relatives. Monroe Evans, 50 years old at the time of trial, Clem Evans, 53, and Johnny Lee Evans, 46, are brothers.[1] Terrance Roberts, 26, is the son of Monroe Evans, and Derry Evans, 28, is a nephew of the brothers. The facts will be further stated as relevant to the points urged on appeal.

---

[1]A fourth brother, LeVorn Evans, 52, also was convicted. His appeal has been severed from those of the remaining defendants.

Following a two-week jury trial, the defendants were found guilty on March 27, 2000. The District Court[2] entered final judgment on the verdicts. This appeal followed.

## II. Discussion

### A. Derry Evans

Derry Evans was convicted under the Mann Act, 18 U.S.C. § 2422(a), of knowingly persuading, inducing, or enticing an individual to travel in interstate commerce to engage in prostitution; under 18 U.S.C. § 2423(a), of three counts of transporting an individual under the age of 18 in interstate commerce with the intent that the individual engage in prostitution; and under 18 U.S.C. § 371, of conspiracy to violate the Mann Act. He also was convicted under 18 U.S.C. § 1956(a)(1)(A)(i) of money laundering and under 18 U.S.C. § 1956(h) of conspiracy to launder money. In addition, he was convicted under 42 U.S.C. § 408(a)(7)(B) of fraudulent use of a social security number.

Following his conviction, the District Court sentenced Derry Evans to 85 years in prison. Based on a total offense level of 43 and a criminal history category of VI, the imprisonment range under the Sentencing Guidelines was life. However, the statutory maximum punishment for the crimes of which he was convicted was 85 years. Therefore, pursuant to U.S. Sentencing Guidelines Manual § 5G1.2(d) (1998), the District Court imposed consecutive sentences to the extent of the combined statutory maximum to achieve a sentence as close as possible to the Guidelines' result. The length of the sentence is not an issue on appeal.

---

[2]The Hon. Jean C. Hamilton, Chief Judge, United States District Court for the Eastern District of Missouri.

### 1. Adequacy of Juror 8's Assurances of Impartiality

Derry Evans argues that the District Court erred in denying his motion to remove a juror who, following his exposure to other jurors' misconduct, refused to give unequivocal assurances that he could be fair and impartial.

On the fourth day of trial, in response to the complaint of one of the jurors—juror 15—about the conduct of certain members of the jury, the Court conducted a voir dire of the jury. In the voir dire, juror 8 testified that he had overheard conversations among other jurors concerning the lack of professionalism and lack of interest of defense counsel, and concerning television coverage of the trial. During his examination by the government's lawyer, the following colloquy took place:

> Q. [Y]ou indicated that some of the jurors or a couple of the jurors had made comments about some of the lawyers. Has that affected your ability to be fair and impartial here today?
>
> A. No.
>
> Q. And as you said, you have an open mind completely on this case?
>
> A. *I'm not sure I can say that.*
>
> Q. Let me ask you this. In the beginning, you were instructed not to make a decision until you've heard all the evidence and the entire case is closed.
>
> A. Uh-huh.
>
> Q. Are you to the point now where you can't—let me rephrase that. Are you to the point where you no longer have a completely open mind?
>
> A. *Some of the content has affected me more than I thought it would.*

Q. But have you—is it going to impact your ability to render a fair and impartial verdict?

A. *I would certainly hope not.*

Q. Have you made a decision as you sit right now on guilt or innocence?

A. That would not be fair. No.

Q. So you haven't done that?

A. No.

Q. And you're going to reserve making a decision on guilt and innocence until all the evidence is done?

A. *To the best of my ability.*

Excerpt of Hearing In Re Jurors at 86-87 (emphasis added).

Later, during examination by defense counsel, the following exchange occurred.

Q. [A]s you sit now—and we have a long way to go maybe—

A. Uh-huh.

Q. —in listening to more evidence—do you have any concerns or qualms about being able to maintain an open mind through the rest of the evidence?

A. *I will do my best.*

Id. at 90-91 (emphasis added).

Citing <u>Thompson v. Altheimer & Gray</u>, 248 F.3d 621 (7th Cir. 2001), and <u>United States v. Gonzalez</u>, 214 F.3d 1109, 1114 (9th Cir. 2000), Derry argues that the District Court's failure to remove juror 8, despite juror 8's equivocal responses to questions about his impartiality and his ability to keep an open mind, was error.

The Sixth Amendment guarantees the right to trial "by an impartial jury." Impartiality is presumed "so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." <u>Lockhart v. McCree</u>, 476 U.S. 162, 184 (1986). Although removal of a juror is appropriate if "a juror has formed an opinion as to the issue to be tried," <u>Reynolds v. United States</u>, 98 U.S. 145, 155 (1878), "[i]t is sufficient if the juror can lay aside his [pretrial] impression or opinion and render a verdict based on the evidence presented in court." <u>Irvin v. Dowd</u>, 366 U.S. 717, 723 (1961). District courts have substantial discretion in conducting voir dire, so our review is for abuse of discretion. <u>United States v. Blom</u>, 242 F.3d 799, 805-06 (8th Cir.), <u>cert. denied</u>, 122 S. Ct. 1984 (2001) ("[I]n federal criminal cases, we will not overturn the district court's finding that a prospective juror can put aside any pretrial opinion and render a verdict based upon the evidence at trial 'unless the error is manifest.'") (quoting <u>United States v. McNally</u>, 485 F.2d 398, 403 (8th Cir. 1973), <u>cert. denied</u>, 415 U.S. 978 (1974)); <u>United States v. Jones</u>, 193 F.3d 948, 951 (8th Cir. 1999).

In <u>Thompson</u>, a race discrimination case brought by an employee against her employer, the Seventh Circuit considered the district court's failure to remove a juror who expressed a belief that some plaintiffs' claims against their employers are spurious and that her background as an owner of a business would "cloud" and "sway" her judgment in the case. 248 F.3d at 624, 626. The court expressed its concern that, in response to questioning, the juror "said she would *try* to be fair, but she expressed no confidence in being able to succeed in the attempt." <u>Id.</u> at 626. The court reversed and remanded for a new trial, concluding that the district judge had not pushed "hard enough to determine whether [the juror] could relinquish her prior

beliefs for purposes of deciding the case." Id. In Gonzalez, a criminal case in which the defendant was convicted for distributing cocaine, the Ninth Circuit considered the district court's failure to remove a juror who, after being asked three times if she could put aside her personal experiences and serve fairly and impartially, responded equivocally with answers such as, "I'll try." 214 F.3d at 1111. The juror had testified on voir dire that she had been married to someone who regularly bought and sold cocaine, had a child with that person, and then divorced him on account of his involvement with drugs, all within approximately five years of sitting on the jury. As the court noted, the activities of the juror's husband, which led to her divorce and the break-up of her family, resembled the fact pattern in the case in which she served. Id. at 1114. The court reversed and remanded for a new trial.

The Thompson and Gonzalez courts both concluded: "When a juror is unable to state that she will serve fairly and impartially despite being asked repeatedly for such assurances, we can have no confidence that the juror will 'lay aside' her biases or her prejudicial personal experiences and render a fair and impartial verdict." Thompson, 248 F.3d at 627 (quoting Gonzalez, 214 F.3d at 1114).

Despite persistent questioning, juror 8 did not state unequivocally that he would be able to keep a completely open mind, remain impartial, and reserve a determination of guilt or innocence until the conclusion of trial. However, unlike Thompson and Gonzalez, in which there was testimony concerning both the prior beliefs of the jurors in question and the jurors' inability to set aside those beliefs in the case they were to consider, here there is no evidence of any prior bias. Nor is there any evidence that juror 8 learned any extrinsic information that would have prejudiced him. Instead, any doubts that the juror may have expressed on voir dire are traceable to the testimony that he had already heard. Unlike pretrial voir dire, the voir dire in question in this case occurred on the fourth day of trial, after several days of testimony. Not only is there nothing wrong with juror 8's being influenced by such prior testimony, he is supposed to be. This testimony is necessarily going to be a

-9-

factor in a competent juror's determination of guilt or innocence. Therefore, we conclude that the District Court's decision to accept the juror's assurance of impartiality as sufficient was within its discretion.

2. Whether the Purchase of a Used Car Affected Interstate Commerce

Derry Evans argues that the government did not present sufficient evidence of money laundering because it failed to establish that his purchase of a used car—a 1987 Mercury Topaz—on June 4, 1997, had any effect on interstate commerce. Relying on United States v. Grey, 56 F.3d 1219, 1224 (10th Cir. 1995), and United States v. Levine, 41 F.3d 607, 614 (10th Cir. 1994), Derry contends that the effect on interstate commerce must occur either at the time of the transaction or later. Moreover, he argues, citing United States v. Monholland, 607 F.2d 1311 (10th Cir. 1979), his driving the car only within Missouri is insufficient to affect interstate commerce.

In considering the sufficiency of the evidence, we view the evidence in the light most favorable to the government's case, reversing only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. See, e.g., United States v. Shoff, 151 F.3d 889, 890 (8th Cir. 1998).

We put aside the questions of whether we should disregard any pre-purchase effects on interstate commerce and whether Derry's use of the car after the purchase actually affected interstate commerce, because it is clear that the purchase itself had an effect on interstate commerce. To come under the statute, the purchase need only "in any way or degree affect[ ] interstate . . . commerce." 18 U.S.C. § 1956(c)(4). Derry bought a car titled in the state of Illinois from a Missouri dealer, and then completed a Missouri application for title. More important, the transaction—the purchase of an automobile from a commercial used car dealer—is sufficient, by itself, to have an effect on interstate commerce. Cf. Russell v. United States, 471 U.S. 858,

-10-

862 (1985) (stating that rental of real estate is unquestionably activity that affects interstate commerce); United States v. Westbrook, 119 F.3d 1176, 1192 (5th Cir. 1997) (holding that purchase of two cars with proceeds from cocaine sale affects interstate commerce), cert. denied, 522 U.S. 1119 (1998).

### 3. Eighth Circuit Model Jury Instruction 6.18.1956J

The District Court gave instruction number 43, a supplemental instruction on money laundering based on Eighth Circuit Model Jury Instruction 6.18.1956J. That instruction omitted the necessity of finding an effect on interstate commerce. After failing to object below, Derry Evans now argues that the District Court committed plain error by giving the model instruction.

On plain-error review, we have discretion to reverse only if there is an error that is obvious and that affects a defendant's substantial rights. United States v. Campa-Fabela, 210 F.3d 837, 840 (8th Cir. 2000), cert. denied, 121 S. Ct. 1739 (2001). Even in such circumstances, we should not exercise our discretion to correct forfeited error "unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993) (citations omitted).

The jury instruction reads as follows:

> *It is not necessary for the government to show* that a defendant actually intended or anticipated an effect on interstate commerce, or *that commerce was actually affected.* All that is necessary is that the natural and probable consequences of a defendant's actions would be to affect interstate commerce no matter how minimal.

Brief of Derry Evans at 11a (jury instruction number 43) (emphasis added); Judicial Committee on Model Jury Instructions for the Eighth Circuit, Manual of Model

Criminal Jury Instructions for the District Courts of the Eighth Circuit 6.18.1956J (2000) (modified).[3]

Derry Evans argues that the instruction erroneously permitted the jury to find him guilty of money laundering even if the transaction at issue—the purchase of an automobile from a used-car dealer in Missouri—arguably did not affect interstate commerce.  He cites to United States v. Aramony, 88 F.3d 1369, 1387 (4th Cir. 1996), cert. denied, 520 U.S. 1239 (1997), for the proposition that the giving of an instruction that negates the need for the jury to find an essential element of the offense causes structural constitutional error that automatically requires reversal.  The government contends that this instruction was not reversible error because, taken as a whole, the instructions made clear that to convict, the jury must find at least a minimal effect on interstate commerce.

The government's position is untenable.  The express language of the instruction informed the jury that it was not necessary to find that Derry Evans's transactions affected interstate commerce to convict him of money laundering under 18 U.S.C. § 1956(a).  Thus, the instructions were reasonably likely to have understated the government's burden of proof.

There is no doubt that the model instruction is incorrect.  An effect on interstate commerce is an essential element of the offense of money laundering.  See 18 U.S.C.

---

[3]The title of this Manual is perhaps somewhat misleading.  The instructions contained in the Manual are "model," and they are for the "Eighth Circuit," but they are not drafted by this Court, or indeed by any court, nor do they have this Court's automatic approval.  As the preface to the Manual states, the instructions are "model, not mandatory" and "the Eighth Circuit cannot give prior approval to the [model] instructions."  Id. at iii.  See also id. at xiii ("The Model Instructions . . . are not binding on the district courts of this circuit, but are merely helpful suggestions to assist the district courts.") (quoting United States v. Norton, 846 F.2d 521, 525 (8th Cir. 1988)).

§ 1956(c)(4). The question remains, however, whether an instruction that eliminated the necessity of a jury finding of that element constituted plain error in this case. A jury instruction that omits a single element of the offense can be subject to harmless error review. Neder v. United States, 527 U.S. 1, 8-9 (1999) (distinguishing cases involving omission of single instruction from cases in which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.") (quoting Rose v. Clark, 478 U.S. 570, 577-78 (1986)); see also United States v. Ben M. Hogan Co., 809 F.2d 480, 481 (8th Cir.), cert. denied, 484 U.S. 822 (1987) (deciding that jury instruction giving conclusive evidentiary presumption of effect on interstate commerce can be harmless error and finding that "because the evidence was so dispositive of the issue of effect on interstate commerce, we can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the conclusive presumption" that interstate commerce was affected).

Other circuits have held that a court's giving erroneous instructions virtually identical to the one given here does not create reversible error. See United States v. Owens, 167 F.3d 739, 755 (1st Cir.), cert. denied, 528 U.S. 894 (1999) (holding that giving of instruction virtually identical to Model Jury Instruction 6.18.1956J was not plain error because substantial evidence supported effect on interstate commerce); United States v. Allen, 129 F.3d 1159, 1164 (10th Cir. 1997) (holding that when evidence establishing effect on interstate commerce is "overwhelming and essentially uncontroverted" omission of element from jury instruction is not reversible error). Cf. United States v. Ables, 167 F.3d 1021, 1030 (6th Cir.), cert. denied, 527 U.S. 1027 (1999) (holding that parties' stipulation that designated financial institution "was engaged in activities which affected in some way or degree interstate commerce" sufficed to establish interstate-commerce nexus, despite erroneous jury instruction).

-13-

We hold that the error was harmless. Underlying the charge for money laundering was the allegation that Derry Evans used proceeds generated from prostitution to purchase a used car. Derry disputes only that the purchase had any effect on interstate commerce. But—as was discussed previously—the purchase of a car necessarily has an effect on interstate commerce. Therefore, the erroneous jury instruction was not plain error.

4. Derry Evans's Conviction for Conspiracy to Launder Money

Derry Evans also argues that the government failed to offer sufficient evidence that he conspired to launder money. To convict Derry of conspiracy to launder money, the government must establish that he knowingly joined a conspiracy to launder money and that one of the conspirators committed an overt act in furtherance of that conspiracy. United States v. Hildebrand, 152 F.3d 756, 762 (8th Cir.), cert. denied, 525 U.S. 1033 (1998). At base, there must exist an agreement to achieve an illegal purpose. United States v. Agofsky, 20 F.3d 866, 870 (8th Cir.), cert. denied, 513 U.S. 909 (1994).

Derry is correct that the government has not produced sufficient evidence of a conspiracy to launder money with his codefendants. However, the charge under the indictment was not limited to conspiracy among the defendants. Rather, count 44 of the indictment charged that all of the defendants "did unlawfully and knowingly combine, conspire, confederate and agree together and with each other, and *with others known and unknown* to the Grand Jury" to launder money in violation of 18 U.S.C. § 1956. (Emphasis added). And the government has produced evidence regarding a conspiracy to launder money between Derry and his prostitutes. Eleana Garcia, one of Derry's prostitutes, testified that she wired money to Derry on several occasions (using aliases) and gave money to Derry from her prostitution earnings, and that he used that money to buy the Mercury Topaz and to pay for their travel expenses. She also testified that when she worked for escort agencies, she had to pay

those agencies a fee out of the proceeds of prostitution. Those agencies promoted prostitution activities. These joint activities necessarily presuppose an agreement between Derry and Ms. Garcia regarding the handling of the proceeds of prostitution. Therefore, viewing all of the evidence in the light most favorable to the government, there was sufficient evidence to convict Derry of conspiring to launder money.

## 5. Other Arguments

Derry Evans raises a variety of other arguments, none of which has merit. Derry argues that the evidence was insufficient to prove that he conspired with the other defendants to violate the Mann Act. However, viewing the evidence in the light most favorable to the government, see Jackson v. Virginia, 443 U.S. 307, 319 (1979), the trial revealed sufficient evidence of an agreement to violate the law. In the course of promoting prostitution, Derry traveled with and stayed in hotels with other defendants. In addition, Ms. Garcia testified that she received referrals for prostitution from Tonya May, one of LeVorn Evans's prostitutes, and that she and Ms. May participated in "two-girl calls," in which they engaged in sex for money and shared the proceeds. Ms. May and Julia Wilson, one of Monroe Evans's prostitutes, testified that they drove Ms. Garcia on prostitution calls. Finally, Deanna Kirkman, one of Terrance Roberts's prostitutes, testified that, following Ms. Wilson's arrest on state charges of prostitution, she witnessed a meeting involving all of the defendants concerning a statement that Ms. Wilson had made implicating the defendants. This evidence suffices to uphold Derry's conviction of conspiracy to violate the Mann Act.

Derry also argues that the District Court erred in admitting evidence of a gang rape. We review the Court's decision for abuse of discretion, which is particularly broad in conspiracy cases. United States v. Davis, 882 F.2d 1334, 1343 (8th Cir. 1989), cert. denied, 494 U.S. 1027 (1990). Here, Latoya Madison, an acquaintance of Ms. Garcia, testified that she took a message to Derry Evans. After arriving to deliver the message, she was directed to a back room, where Derry asked her if she

would work for him as a prostitute. When she refused, he had her raped by three men, after which he again asked if she would work for him. When she again refused, he said that he would have people continue to rape her until she agreed. Derry asserts that the Court should have disallowed this testimony as character evidence under Rule 404(b) of the Federal Rules of Evidence and that, under Rule 403, the prejudicial effect of allowing the evidence far outweighed its probative value.

Derry misconstrues this testimony as character evidence to be evaluated under Rule 404(b) when, in fact, it is direct evidence of the Mann Act violations and the conspiracy. The rape—along with various other violent acts introduced into evidence—were actions taken to recruit, control, and discipline prostitutes. Regarding exclusion under Rule 403, substantial discretion is given to the District Court in weighing probative evidence—which this testimony clearly was—against prejudicial effect—which is also present here. The Court did not abuse this discretion.

Derry Evans was convicted under 18 U.S.C. § 2422(a), which states that whoever knowingly "persuades, induces, entices, or coerces" an individual to travel in interstate commerce to engage in prostitution, violates that section. However, his indictment charged only that he knowingly "persuaded, induced and enticed" an individual to travel in interstate commerce, omitting the reference to coercion. The Court's jury instruction reinstated the coercion element not charged in the indictment, asking whether the defendant "persuaded, induced, enticed, or coerced" an individual to travel in interstate commerce. Derry argues that by submitting evidence on coercion and inserting the coercion element into the instruction, the government and the District Court constructively amended the indictment in violation of the Fifth Amendment. Because Derry failed to object to the instruction, our review is for plain error. There is none. Adding "coerced" to the instruction had no effect on the case other than, perhaps, to raise the government's burden of proof. If the jury found

Derry to have violated the statute by coercing his victims to travel in interstate commerce, then he necessarily induced them to do so.

Derry next argues that the District Court committed plain error by submitting jury instructions that failed to identify the victims of the Mann Act violations by name. This Court has upheld indictments, like the ones at issue here, that failed to identify victims by name. See, e.g., United States v. Gay, 577 F.2d 465, 466 (8th Cir. 1978) (holding description of victims as "campers" to be sufficiently specific). Derry asserts, however, that lack of specificity in a jury instruction is different from lack of specificity in an indictment. Citing Stump v. Bennett, 398 F.2d 111, 116 (8th Cir. 1986), cert. denied, 393 U.S. 1001 (1968), he argues that jury instructions are erroneous and prejudicial if they result in substantial jury confusion, and that, in this case, there is substantial record evidence of jury confusion. There is some evidence of juror confusion early in the proceedings. In addition, the jury asked several questions during the deliberation stage (such as requests for the testimony of several witnesses, confusion as to who various prostitutes were and their ages, and the submitted question, "who is with who?"). However, this evidence is insufficient to overcome—on plain error review—the presumption that the jury has followed the instructions, United States v. Paul, 217 F.3d 989, 997 (8th Cir. 2000), cert. denied, 122 S. Ct. 71 (2001), and the sufficiency of the evidence of guilt in this case. In a long, complicated trial, jurors, like any conscientious observers, may be uncertain of details at some point. This does not mean they did not ultimately come to a reasoned decision.

Derry Evans also argues that the District Court erred in refusing to sever his case from the cases of the other defendants under Federal Rule of Criminal Procedure 14. We review for abuse of discretion, asking whether "definite prejudice" resulted that is sufficient to overcome "[t]he [strong] presumption against severing properly joined cases." United States v. Delpit, 94 F.3d 1134, 1143 (8th Cir. 1996). That prejudice must be "severe or compelling" because "rarely, if ever, will it be improper

-17-

for co-conspirators to be tried together." United States v. Warfield, 97 F.3d 1014, 1018 (8th Cir. 1996), cert. denied, 520 U.S. 1110 (1997) (citation omitted). Derry has not met his heavy burden of establishing an abuse of discretion.

Derry also argues that the District Court erred in finding that he was a "leader" under the Sentencing Guidelines. U.S. Sentencing Guidelines Manual § 3B1.1(a) (1998). Section 3B1.1(a) reads: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." Because Derry did not object at sentencing, the applicability of this Guideline is reviewed for plain error. There is none. The evidence supports the determination that all five defendants were part of a criminal activity involving interstate transportation for prostitution. With regard to whether Derry was a leader, the evidence indicates his participation in the meeting concerning Julia Wilson's statement. Moreover, he hired a driver, Jessica Richardson, to take Ms. Garcia on prostitution calls, thereby satisfying the requirement that he be "the organizer, leader, manager, or supervisor of one or more other participants." Id., cmt. n.2; § 2G1.1, cmt. n.3 ("For the purposes of § 3B1.1 (Aggravating Role), a victim, as defined in this guideline, is considered a participant only if that victim assisted in the promoting of prostitution or prohibited sexual conduct in respect to another victim."); United States v. Jarrett, 956 F.2d 864, 868 (8th Cir. 1992) (holding, under earlier version of Guidelines, that § 2G1.1 prevents prostitutes from being considered "participants" under § 3B1.1 unless they assisted in unlawful transportation of others). Even though Ms. Richardson worked in that capacity for less than a week, the District Court did not commit plain error.

Finally, Derry argues that the District Court erred in refusing to give a multiple-conspiracy instruction that set forth the theory of his defense to the charge of conspiracy to violate the Mann Act. The requested instruction is as follows:

The government must convince you beyond a reasonable doubt that each defendant was a member of the conspiracy charged in the indictment. If the government fails to prove this as to a defendant, then you must find that defendant not guilty of the conspiracy charge, even if you find that he was a member of some other conspiracy. Proof that a defendant was a member of some other conspiracy is not enough to convict.

Brief of Derry Evans at 14a (refused jury instruction D); Eighth Circuit Model Jury Instruction 5.06G. Derry's theory was that he conspired only with his prostitutes, not with his codefendants.

Whether there is sufficient evidence to sustain a multiple-conspiracy instruction is a question of law subject to de novo review. United States v. Hall, 171 F.3d 1133, 1149 (8th Cir. 1999), cert. denied, 529 U.S. 1027 (2000) (citation omitted). Although the defendant usually is entitled to receive an instruction on a theory of defense "even though the evidentiary basis for that theory is weak, inconsistent, or of doubtful credibility," Closs v. Leapley, 18 F.3d 574, 580 (8th Cir. 1994) (citation omitted), failure to give the conspiracy instruction requested here was harmless error. The evidence of a conspiracy between Derry and the other defendants was overwhelming.

## B.  Terrance Roberts

Terrance Roberts was convicted under the Mann Act, 18 U.S.C. § 2422(a), of knowingly persuading, inducing, or enticing an individual to travel in interstate commerce to engage in prostitution; under 18 U.S.C. § 2423(a), of transporting an individual under the age of 18 in interstate commerce with the intent that the individual engage in prostitution; and under 18 U.S.C. § 371, of conspiracy to violate the Mann Act. He also was convicted under 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2, of money laundering and under 18 U.S.C. § 1956(h), of conspiracy to launder money.

Following his conviction, the District Court sentenced Terrance Roberts to 36 years in prison (432 months). Based on a total offense level of 37 and a criminal history category of III, the imprisonment range under the Sentencing Guidelines was 262 to 327 months. From the high end of the range, the Court departed upward by 105 months.

### 1. The District Court's Jury Instructions on "Knowledge"

Terrance Roberts raises a number of arguments on appeal. He first argues that the District Court's general "knowledge" instruction, given as part of the Mann Act instructions, conflicted with the Court's specific "knowledge" instruction under the money-laundering count.

The Mann Act prohibits anyone from "knowingly transport[ing] any individual in interstate . . . commerce" for purposes of prostitution, 18 U.S.C. § 2421, from "knowingly persuad[ing], induc[ing], entic[ing], or coerc[ing] any individual to travel in interstate . . . commerce" for purposes of prostitution, 18 U.S.C. § 2422, and from "knowingly transport[ing] an individual who has not attained the age of 18 years in interstate . . . commerce" for purposes of prostitution, 18 U.S.C. § 2423. The District Court gave the following definition of the term "knowingly" in jury instruction number 8:

> An act is done knowingly if a defendant is aware of the act and does not act through ignorance, mistake, or accident. The government is not required to prove that a defendant knew that his acts or omissions were unlawful. You may consider evidence of a defendant's words, acts, or omissions, along with all the other evidence, in deciding whether that defendant acted knowingly.

Brief of Terrance Roberts at 9a; Eighth Circuit Model Jury Instruction 7.03 (modified).

-20-

In contrast to the general knowledge requirement of the Mann Act—in which the jury need not find that the defendant knows that the act being committed is unlawful—the money-laundering statute does require certain knowledge of illegality. Specifically, to be convicted under the money-laundering statue, an individual must, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conduct[ ] or attempt[ ] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1). In conjunction with the money-laundering counts, the District Court gave jury instruction number 40, which stated that to convict on those counts the jury had to find that "at the time that defendant conducted or attempted to conduct the financial transaction, that defendant knew the property represented the proceeds of some form of unlawful activity." Brief of Terrance Roberts at 10a. In jury instruction number 43, the Court gave supplemental instructions defining "knowledge" with regard to the money-laundering counts:

> The phrase "knew the property represented the proceeds of some form of unlawful activity," means that the defendant knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony offense under State or Federal law. Thus, the government need not prove that the defendant specifically knew that the property involved in the financial transaction represented the proceeds of the transportation of individuals in interstate commerce with the intent that said individuals engage in prostitution, or any other specific offense; it need only prove that the defendant knew it represented the proceeds of some form, though not necessarily which form, of felony under state or federal law.

Brief of Terrance Roberts at 13a; Eighth Circuit Model Jury Instruction 6.18.1956J (modified).

Mr. Roberts argues that these instructions provided conflicting directions for the jury on the mental element of money laundering. The conflict resulted, he argues, in the effective omission of the requirement that he know that the money being transferred came from an unlawful activity. Because he failed to raise an objection at sentencing, our review is for plain error.

Not only is there no plain error, there is no error. Jury instructions are evaluated in the context of the entire charge, United States v. Davis, 237 F.3d 942, 944, n.2 (8th Cir. 2001), and we may not reverse a conviction unless, viewed in their entirety, the jury instructions fail to state the law correctly. Paul, 217 F.3d at 996. In this case, the knowledge requirement under one statute, the Mann Act, is different from the knowledge requirement under the money-laundering statute. The District Court correctly presented the requirements of the respective statutes in its jury instructions. Its separate instructions do not conflict; they simply relate to different statutes. There is no evidence of juror confusion and no indication that an element of money laundering was effectively omitted; therefore, there is no error.

## 2. Other Arguments

Mr. Roberts also argues that a number of the jurors' actions were misconduct and merit a mistrial. Specifically, he asserts that a juror slept during the evidence, that jurors discussed evidence while the case was being presented, that a juror watched news reports about the case, that a juror read advertisements in a newspaper referred to in the trial, and the jurors began to deliberate and form opinions of guilt or innocence early in the trial. We review for abuse of discretion. United States v. Williams, 77 F.3d 1098, 1100 (8th Cir.), cert. denied, 519 U.S. 967 (1996) (noting that district court has "broad discretion in handling allegations of juror misconduct").

Regarding the sleeping juror, once the existence of a sleeping juror was brought to the Court's attention, the Court stated that it would watch the juror and

order more recesses. At a later side-bar conference with counsel, the Court stated that it had been watching the juror, concluding that "[h]e's been okay." Trial Transcript, Vol. III at 147. The Court handled the matter appropriately and did not abuse its discretion.

During the voir dire of the jury on the fourth day of trial, juror 12 testified that his wife had talked to him about newspaper reports of the case, and that he had seen television coverage of the trial. He also admitted to having referred to the news coverage in conversations with other jurors. In response to this testimony, juror 12 was—properly—stricken. Several of the other jurors testified that they had participated in or overheard conversations regarding the professional conduct of the defense attorneys, speculation as to the defendants' assets, and the existence of news coverage and the presence of the media. One juror also testified that he had seen personal advertisements in the RiverFront Times that were similar to ones posted by the defendants.

Relying on United States v. Blumeyer, 62 F.3d 1013 (8th Cir. 1995), cert. denied, 516 U.S. 1172 (1996), Mr. Roberts argues that when juror misconduct exposes the jury to factual matters not in evidence, a presumption of prejudice attaches, requiring the government to prove beyond a reasonable doubt that the misconduct did not harm the defendants. Id. at 1016-17. The principal problem with this argument is that there has not been a sufficient showing that any of the jurors—other than juror 12, who was dismissed—were exposed to any prejudicial extrinsic information related to a substantive issue at trial; so the presumption does not attach. Moreover, the allegations of misconduct arose on the fourth day of a fourteen-day trial, and there were no further allegations of misconduct. Finally, even if any presumption did attach, any extrinsic information that certain jurors received was likely harmless beyond a reasonable doubt. The District Court did not abuse its discretion in determining that the jurors remained competent to serve.

Mr. Roberts also argues that juror 8 was unable to provide adequate assurances of impartiality. We addressed this argument, as made by Derry Evans, above.

Mr. Roberts also argues that the District Court violated the Double Jeopardy Clause by imposing a sentence for both money laundering and transporting an individual for prostitution. He argues that because the money-laundering statute requires the use of proceeds from a specified unlawful activity—in this case, transportation for prostitution under the Mann Act—the specified unlawful activity is itself a lesser included offense of money laundering. He is incorrect. As the government points out, Mr. Roberts was convicted of multiple crimes flowing from an extended course of conduct. Interstate transportation for prostitution—the specified unlawful activity that triggers the money laundering statute in this case—is not a lesser included offense of money laundering even though money laundering requires the existence of some specified unlawful activity. The money-laundering statute includes, as predicate offenses, so to speak, a long list of "specified unlawful activities." No single one of them is invariably an essential element of money laundering. It is not the law that anybody convicted of money laundering is thereby, under the Double Jeopardy Clause, immunized from prosecution for the underlying offense. Money laundering and interstate transportation for prostitution are separate offenses that each bear their own punishment, and neither the Court's decision to sentence Mr. Roberts for both of them nor its decision to make the sentences consecutive violates the Double Jeopardy Clause.

Similarly, Mr. Roberts contends that he was subjected to multiple punishments double counting) for obstruction of justice in violation of the Double Jeopardy Clause. Specifically, he argues that the Court erred by enhancing his sentence for obstruction of justice, under U.S. Sentencing Guidelines Manual § 3C1.1 (1998), for instructing Deanna Kirkman, one of his prostitutes, to lie to a federal grand jury, when that act served as one of the overt acts alleged in the charge of conspiracy to transport individuals for prostitution under the Mann Act. Our review is de novo.

We find no error here. A convicted defendant can be punished for an overt act, as well as for the conspiracy requiring an overt act, assuming the overt act itself is also a crime. Conspiracy and a substantive act taken as part of that conspiracy can be separate crimes. See United States v. Halls, 40 F.3d 275, 277 (8th Cir. 1994), cert. denied, 514 U.S. 1076 (1995) ("Even though the substantive offense was within the time frame of the conspiracy, 'the same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses, for the agreement to do the act is distinct from the act itself.' ") (internal citation omitted); United States v. Thomas, 971 F.2d 147, 149 (8th Cir. 1992), cert. denied, 510 U.S. 839 (1993) ("[N]o double jeopardy violation occurs when a person is . . . convicted of conspiracy and a substantive overt act of the conspiracy.") (citation omitted). Therefore, it was not incorrect for the District Court to enhance Mr. Roberts's sentence for obstruction of justice simply because that act also served as an overt act of the conspiracy.

Mr. Roberts also contends that the District Court abused its discretion and violated the Double Jeopardy Clause by granting the government's motion for an upward departure of 105 months based on U.S. Sentencing Guidelines Manual §§ 5K2.2 (significant physical injury) and 5K2.8 (extreme conduct) and for enhancing his sentence for being a leader and an organizer. Regarding significant physical injury, there is sufficient evidence of significant injury to both Tammy Huisinga (head trauma and cuts) and Deanna Kirkman (ear damage) as a result of beatings from Mr. Roberts. Although Mr. Roberts argues that neither victim went to the hospital or obtained medical documentation of permanent injury, there is sufficient testimonial evidence of injury. The Court did not abuse its discretion.

Regarding extreme conduct, there also is sufficient evidence, including Mr. Roberts's forcing Ms. Huisinga to participate in the making of a pornographic videotape with Ms. Kirkman and Theresa Krueger. Mr. Roberts argues that the departure was impermissible double counting and a violation of the Double Jeopardy Clause because the guideline base for sexual exploitation of a minor, § 2G2.1, which

-25-

the District Court used, already accounted for that conduct. However, under <u>Koon v. United States</u>, 518 U.S. 81 (1996), conduct can be considered both in the crime and in the upward departure. <u>Id.</u> at 96. The key question is whether "the factor is present to an exceptional degree," or something else "makes the case different from the ordinary case where the factor is present." <u>Id.</u> Thus, it was not an abuse of discretion for the District Court to determine that the departure basis was not already fully taken into account because of the severity of the beatings and because of the coercion involved in the making of the child pornographic videotape.

Mr. Roberts argues that the District Court erred in determining that he was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, so as to warrant a four-point sentence enhancement under U.S. Sentencing Guidelines Manual § 3B1.1 (1998). Specifically, Mr. Roberts contends that the District Court abused its discretion because it failed to state in open court its specific reasons for departing, as required by 18 U.S.C. § 3553(c). However, Mr. Roberts failed to object to this adjustment at the time of sentencing, so we review for plain error only. Despite the language of § 3553(c), under <u>United States v. Flores</u>, 9 F.3d 54 (8th Cir. 1993), unless the defendant objects, the court can adopt the recommendation of the presentence report without stating its reasons on the record. <u>Id.</u> at 55. Under the plain error standard, there is evidence to support enhancement because Mr. Roberts supervised prostitute Tammy Huisinga, who served as a trainer for minor prostitute Deanne Kirkman. See U.S. Sentencing Guidelines Manual § 2G1.1 (1998), cmt. n.3. <u>Cf.</u> <u>Jarrett</u>, 956 F.2d at 868 (noting that prostitutes are victims and not participants unless they assist in unlawful transportation of others).

Mr. Roberts also argues that the District Court clearly erred by enhancing his sentence for targeting vulnerable victims. U.S. Sentencing Guidelines Manual § 3A1.1(b)(1) (1998). He argues that the basis for the enhancement—his targeting of the 15-year-old Theresa Krueger—is erroneous because Ms. Krueger's age was already incorporated into his base-offense-level calculation under § 2G2.1 (sexual

exploitation of a minor). United States v. Coates, 996 F.2d 939 (8th Cir. 1993) (noting that when court uses § 2G2.1 as base offense level, vulnerable-victim adjustment for age alone may constitute impermissible double counting). Moreover, he argues, even though Ms. Krueger had worked as a prostitute prior to meeting Mr. Roberts, her father had died when she was young, and her mother was incarcerated, she was not atypically vulnerable as compared to other victims that the Mann Act is intended to protect. The government's own expert witness testified that such victims are often runaways and individuals with family problems and drug dependency. Nevertheless, despite some commonality between Ms. Krueger and the typical underage victim of the Mann Act, given the deference to the District Court's findings of fact, there is not sufficient evidence to find that the Court clearly erred in enhancing Mr. Roberts's sentence under § 3A1.1(b)(1) for targeting vulnerable victims. The District Court did not clearly err in finding Ms. Krueger more vulnerable than the average minor victim.

Mr. Roberts further argues that the District Court erred in submitting to the jury the alias "Terry Evans" as applicable to him. He contends that the evidence adduced at trial showed that he was not known as Terry Evans, and that there was another, older, individual who was known to the witnesses as Terry Evans. Although we have recommended that aliases not be used, see Petrilli v. United States, 129 F.2d 101, 104 (8th Cir.), cert. denied, 317 U.S. 657 (1942), we have also upheld their use. See United States v. Bradford, 246 F.3d 1107, 1117-18 (8th Cir. 2001). Mr. Roberts is correct that there was evidence of another man named Terry Evans; however, one witness, Julia Wilson, identified Mr. Roberts by both names and distinguished the older Terry Evans from Mr. Roberts. The record also reveals that on the other occasions when witnesses testified concerning the older Terry Evans, it was made clear to the jury that the testimony did not refer to Mr. Roberts. The record does not indicate that juror confusion resulted from the use of the alias, so there was no prejudice to Mr. Roberts. Moreover, any association to the Evans family implied by use of the alias was not inaccurate, given that he is the son of Monroe Evans.

-27-

Finally, Mr. Roberts argues that the District Court abused its discretion by refusing to grant a severance of Mr. Roberts's trial from those of the other codefendants pursuant to Federal Rule of Criminal Procedure 14. We reject this argument for the reasons set out above with regard to the same argument made by Derry Evans.

## C. Monroe Evans

Monroe Evans was convicted under the Mann Act, 18 U.S.C. § 2421, of knowingly transporting an individual in interstate commerce with the intent that the individual engage in prostitution; under 18 U.S.C. § 2422(a), of knowingly persuading, inducing, or enticing an individual to travel in interstate commerce to engage in prostitution; and under 18 U.S.C. § 371, of conspiracy to violate the Mann Act. He also was convicted under 18 U.S.C. § 1956(a)(1)(A)(i) of two counts of money laundering; under 18 U.S.C. § 1956(a)(1)(B)(i), of money laundering; and, under 18 U.S.C. § 1956(h), of conspiracy to launder money.

Following his conviction, the District Court sentenced Monroe Evans to 33 years in prison (396 months). Based on a total offense level of 37 and a criminal history category of II, the imprisonment range under the Sentencing Guidelines was 235 to 293 months. From the high end of the range, the Court departed upward by 103 months.

The parties agree that the District Court committed plain error, violating the Ex Post Facto Clause, by applying altered versions of 18 U.S.C. §§ 2421 and 2422(a), which were amended after the date of the charged offenses, to counts 17 and 18 of the indictment. That error resulted in Monroe's being sentenced to punishment greater than that existing at the time the offenses were committed. The parties agree that the statutory maximum for each of those counts was five years in prison—not the ten years that Monroe received—at the time of the charged offenses.

-28-

Monroe Evans, both through counsel and pro se, raises a number of arguments on appeal. Of these arguments, several also were made by Derry Evans or Terrance Roberts, including that: (1) the District Court's imposition of sentences for both money laundering and transporting an individual for prostitution violates the Double Jeopardy Clause; (2) various of the jurors' actions resulted in juror misconduct and merit a mistrial; (3) the District Court gave conflicting jury instructions on the mental element for money laundering, resulting in the omission of the element of knowledge that the money being transferred came from an illegal activity; and (4) the District Court abused its discretion by failing to sever Monroe's trial from those of the other defendants pursuant to Federal Rule of Criminal Procedure 14. For the reasons discussed previously, these arguments are without merit.

Like Terrance Roberts, Monroe Evans contends that the District Court committed clear error by enhancing his sentence for targeting vulnerable victims under U.S. Sentencing Guidelines Manual § 3A1.1(b)(1). Like Terrance Roberts, he argues that his victims were not atypically vulnerable. However, the testimony reflects that when Julia Wilson, one of Monroe's victims, met Monroe, she was incarcerated and addicted to drugs and alcohol. Monroe picked her up upon her release from prison and furnished her with alcohol and drugs. Monroe also supplied drugs to Amanda Kicker, another of his victims. Thus, deferring to the District Court, we affirm the sentence enhancements. The Court did not clearly err.

Also like Terrance Roberts, Monroe Evans argues that the District Court acted unreasonably, abused its discretion, and violated the Double Jeopardy Clause by granting the government's motion for an upward departure of 103 months based on U.S. Sentencing Guidelines Manual §§ 5K2.2 (significant physical injury), 5K2.6 (use of a weapon) and 5K2.8 (extreme conduct). The Court explained that each of these bases was independently sufficient to impose an upward departure. Monroe contends that his case does not fall outside of the heartland of the applicable Guidelines because the Court used § 2A3.1 (criminal sexual abuse) as the base

offense and enhanced that base by four levels pursuant to § 2A3.1(b)(1). Citing to the application notes to the section, he argues that use of force against the victim, threatening or placing the victim in fear of death or serious bodily injury, rendering the victim unconscious, administering intoxicants or drugs, and using or brandishing a weapon are incorporated into his enhanced offense level, so further departure is impermissible. U.S. Sentencing Guidelines Manual § 2A3.1, cmt. n.1 (1998). However, as discussed previously with regard to Terrance Roberts, the question is whether the factors were present to an exceptional degree. Koon, 518 U.S. at 96.

Regarding significant physical injury, Monroe argues that among his victims Julia Wilson, Amanda Kicker, and Rosita Francis, there were no hospital stays, surgery, or permanent disability, so there were no serious injuries. This argument is incorrect. There is sufficient evidence of significant injury to Ms. Francis (a split head from a beating with a cable cord), Ms. Kicker (bruises, a split lip, and eyes swollen shut), and Ms. Wilson (cuts on the head and beatings requiring hospital stays) as a result of Monroe's physical abuse to satisfy us that the District Court did not abuse its discretion. Regarding use of a weapon, Ms. Wilson testified that Monroe beat her with a gun and threatened her with it. Again, the Court did not abuse its discretion.

Regarding extreme conduct, there also is evidence that Monroe forced Ms. Wilson to work as a prostitute up to the time of birth of her children, threatened her with murder, threatened her with abortion of her child by the use of a vacuum hose, forced her to perform oral sex on him, and forced her to engage in sex with another woman. Monroe also subjected Ms. Wilson to body-cavity searches in the presence of her children. Monroe also forced Ms. Kicker to perform oral sex on him, and, on one occasion, beat her until she passed out and, when she came to consciousness, forced her to perform oral sex on him. This testimony makes clear that the District Court did not abuse its discretion in departing upward.

In his pro se brief, Monroe challenges the sufficiency of the evidence relating to his conviction of money laundering and conspiracy to commit money laundering. He argues that there was insufficient evidence to establish that he engaged in a financial transaction, under 18 U.S.C. § 1956(a)(1)(A)(i), to promote interstate transportation for prostitution, and, under § 1956(a)(1)(B)(i), to conceal the proceeds of interstate transportation for prostitution. He also argues that the evidence was insufficient to tie him to his codefendants. We review the evidence in the light most favorable to the government. Jackson, 443 U.S. at 319.

Regarding promotion, Ms. Wilson testified that Monroe had her wire prostitution proceeds from St. Louis to Terrance Roberts (Monroe's son) in Minnesota. Mr. Roberts used the funds to purchase a Mercedes Benz that was used on prostitution calls. Monroe also purchased a Dodge Aries which was used on prostitution calls. Regarding concealment, Julia Wilson testified that Monroe told her that she would have to work extra hard to make money for a down payment on his mother's house. Tonya May testified that she was present for a conversation among Monroe, LeVorn, Clem, and Johnny Lee regarding funding the down payment on the house. Monroe then sent Ms. Wilson to collect money from LeVorn and Johnny Lee, and, with Stacy Ballantyne, another prostitute, to purchase cashier's checks. They purchased four checks totaling $7000 and sent them to Alice Evans. The checks were later used for the down payment on Alice's house. This evidence is clearly sufficient to establish concealment, promotion, and joint action among the codefendants. The District Court did not err.

Like Derry Evans, Monroe Evans argues that the District Court erred in admitting evidence of his violent behavior as direct evidence of the conspiracy. Specifically, Monroe contests the admission of evidence concerning numerous violent acts, including repeated beatings of Rosita Francis, Amanda Kicker, and Julia Wilson and forced oral sex. For the reasons discussed above, these violent acts are relevant

and probative of Mann Act violations because they describe actions taken to recruit, control, and discipline prostitutes. The Court did not abuse its discretion.

Monroe also contends that the District Court erred in refusing to give a defense instruction on multiple conspiracies. Derry Evans raised the same issue. For the reasons discussed above, we reject this argument. Monroe further alleges that there was insufficient evidence of conspiracy linking him to the other defendants. He is mistaken. There is more than ample evidence of agreement between Monroe and his coconspirators both with regard to violations of the Mann Act—including Monroe's ordering Julia Wilson, his prostitute, to drive Ms. Garcia, Derry's prostitute, on prostitution calls—and with regard to money laundering, as discussed above.

Monroe argues that counts nineteen (charging money laundering under 18 U.S.C. § 1956(a)(1)(A)(i) and aiding and abetting under 18 U.S.C. § 2) and twenty (charging money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) and aiding and abetting under 18 U.S.C. § 2) of the indictment were legally insufficient. Specifically, he argues that aiding and abetting is a specific-intent crime that requires identification of all of its elements in the indictment, that the indictment failed to specify the elements of aiding and abetting, 18 U.S.C. § 2(a), and willfulness, 18 U.S.C. § 2(b), and that, therefore, the indictment is fatally defective. The government argues that the indictment need not allege those elements—being insufficient only if an essential element of substance was omitted—and that the indictment is sufficient as long as it fairly apprises the accused of the charges and allows him to plead double jeopardy. However, according to the judgment sheet, Monroe was not convicted of aiding and abetting, so the question whether the indictment sufficiently alleged that charge is moot.

Monroe next argues that the District Court abused its discretion by allowing the presence of federal marshals and court security officers in the courtroom. He asserts that the presence of such officers with visible badges deprived him of his right

to a fair trial because it jeopardized the appearance of a presumption of innocence. As the government points out, the need for and extent of security measures in a courtroom during trial are within the sound discretion of the trial court. United States v. Darden, 70 F.3d 1507, 1533 (8th Cir. 1995), cert. denied, 517 U.S. 1149 (1996). This argument is frivolous.

Monroe also argues that his trial counsel was ineffective for failing to make an opening statement, revealing to the jury that he was court-appointed, and conceding Monroe's guilt in his closing statement. Claims of ineffective assistance of counsel are properly raised in a post-conviction motion under 28 U.S.C. § 2255, not on direct appeal. United States v. Embrey, 250 F.3d 1181, 1184 (8th Cir. 2001). Were we to consider Monroe's argument at this stage, we would find it unpersuasive. While a couple of Monroe's counsel's decisions—failing to give an opening statement and referring to himself as court-appointed once in the course of a two-week trial—may not have represented ideal trial practice, given the strong presumption of attorney competence, these decisions did not render counsel ineffective. Finally, counsel did not concede guilt in his closing argument, but rather tried to diffuse the government's arguments addressed to the jury's emotions.

Finally, Monroe argues that plain error occurred when counsel for Johnny Lee and counsel for Derry, in the course of questioning witnesses, revealed that the defendants were in custody. We find none. It is the burden of the defendant to show prejudice from an inadvertent revelation. United States v. Robinson, 645 F.2d 616 (8th Cir.), cert. denied, 454 U.S. 875 (1981). Here, not only was there no prejudice established, but there was a tactical advantage to the revelation. Through the questioning, counsel established that Tonya May continued to work as a prostitute even after the defendants had all been incarcerated, thereby implying that she worked as a prostitute voluntarily, not because of control or abuse by the defendants. There is no plain error.

-33-

## D. Clem Evans

Clem Evans was convicted under the Mann Act, 18 U.S.C. § 2421, of two counts of knowingly transporting an individual in interstate commerce with the intent that the individual engage in prostitution; under 18 U.S.C. § 2422(a), of knowingly persuading, inducing, or enticing an individual to travel in interstate commerce to engage in prostitution; and under 18 U.S.C. § 371, of conspiracy to violate the Mann Act. He also was convicted under 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2, of money laundering; under 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2, of money laundering; and under 18 U.S.C. § 1956(h), of conspiracy to launder money.

Following his conviction, the District Court sentenced Clem Evans to 20 years in prison (240 months). Based on a total offense level of 32 and a criminal history category of II, the imprisonment range under the Sentencing Guidelines was 135 to 168 months. From the high end of the range, the Court departed upward by 72 months.

As with Monroe, the parties agree that the District Court committed plain error, violating the Ex Post Facto Clause, by applying altered versions of 18 U.S.C. §§ 2421 and 2422(a), which were amended after the date of the charged offenses, to counts 22, 23, and 24 of the indictment. The parties agree that the statutory maximum for each of those counts was five years in prison—not the ten years that Clem received—at the time of the charged offenses.

Clem Evans raises a number of arguments on appeal. Of these arguments, several also were made by Derry Evans or Terrance Roberts, including that: (1) the District Court's imposition of sentences for both money laundering and transporting an individual for prostitution violates the Double Jeopardy Clause; (2) various of the jurors' actions resulted in juror misconduct and merit a mistrial; and (3) the District Court gave conflicting jury instructions on the mental element for money laundering,

resulting in the omission of the element of knowledge that the money being transferred constituted the proceeds of an illegal activity. For the reasons discussed previously, these arguments are without merit.

Clem Evans also argues that the District Court erred by allowing the government's expert witness on prostitution, Sergeant Andrew Schmidt, a Minneapolis police officer familiar with vice and prostitution investigations, to testify without holding a Daubert hearing. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). He contends that the Court was unable to determine properly the reliability of the testimony, and that the testimony was both prejudicial and improper. The government argues that the testimony was reliable and relevant. We review for abuse of discretion. Smith v. Rasmussen, 249 F.3d 755, 758 (8th Cir. 2001). Under Daubert and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), the judge is to act as a gatekeeper in determining whether the proposed expert's testimony both is relevant and rests upon a reliable foundation. Id. at 149.

Here, the District Court was satisfied with Sergeant Schmidt's education, training, and experience. Sergeant Schmidt testified regarding the operation of a prostitution ring, including recruitment of prostitutes and the relationship between pimps and prostitutes, and regarding jargon used in such rings. There is no requirement that the District Court always hold a Daubert hearing prior to qualifying an expert witness under Federal Rule of Evidence 702, and the Court did not abuse its discretion in finding the proposed testimony of Sergeant Schmidt to be both reliable and relevant, and in allowing that testimony.

Like Terrance Roberts and Monroe Evans, Clem Evans contends that the District Court committed clear error by enhancing his sentence for targeting vulnerable victims under U.S. Sentencing Guidelines Manual § 3A1.1(b)(1). Like both of them, he argues that his victims were not atypically vulnerable. However, the testimony reflects that when Clem, then 38 years old, met Stacy Ballantyne, one of

his victims, sometime during 1985 or 1986, she was 14 years old, a runaway, and hiding from the police. Later, she developed a cocaine addiction. Clem argues that he was not aware of her age when they met, and that Ms. Ballantyne did not have a drug addiction when they met. Nevertheless, Clem certainly did take advantage of her condition—encouraging and contributing to her addiction by furnishing her with drugs to prevent her from leaving and moving her in with him and his mother. Thus, deferring to the District Court, we affirm the sentence enhancements. The Court did not clearly err.

Finally, also like Terrance Roberts and Monroe Evans, Clem Evans argues that the District Court acted unreasonably, abused its discretion, and violated the Double Jeopardy Clause by granting the government's motion for an upward departure of 72 months based on U.S. Sentencing Guidelines Manual §§ 5K2.2 (significant physical injury), 5K2.4 (unlawful restraint), and 5K2.8 (extreme conduct). Although Clem asserts that the Court used § 2A3.1 (criminal sexual abuse; base level 27) as the base offense and enhanced that base by four levels pursuant to § 2A3.1(b)(1), the presentence report and the sentencing hearing reveal that the Court in fact used § 2G1.1 (promoting prostitution; base level 14) as the base offense, enhancing under §§ 2G1.1(b)(1) (4 levels for use of physical force), 2G1.1(b)(2)(B) (7 levels for age of victim), 3A1.1(b)(1) (2 levels for vulnerable victim), 3A1.3 (2 levels for victim restraint), and 3B1.1(c) (2 levels for aggravating role).

Regarding significant physical injury, there is sufficient evidence of significant injury to Ms. Ballantyne, including a split head, bruises, and swelling from beatings with a shoe and a cable cord. There is also sufficient evidence of Clem's extreme conduct toward Ms. Ballantyne, including repeated beatings of her with a cable cord and other weapons, preventing her from seeking medical treatment, forcing her to work as a prostitute while pregnant until the delivery of her children, and providing her with crack cocaine to prevent her from leaving. Regarding unlawful restraint, the District Court found that Clem's keeping Ms. Ballantyne at his sister's

-36-

house—despite evidence indicating that she could come and go as she pleased—and tying her to a bed to beat her on one occasion satisfies this section. We conclude that the District Court did not abuse its discretion in departing upward.

## E. Johnny Lee Evans

Johnny Lee Evans was convicted under 18 U.S.C. § 371 of conspiracy to violate the Mann Act. He also was convicted under 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 of money laundering, and under 18 U.S.C. § 1956(h) of conspiracy to launder money.

Following his conviction, the District Court sentenced Johnny Lee Evans to 17 years and 7 months in prison (211 months). Based on a total offense level of 30 and a criminal history category of III, the imprisonment range under the Sentencing Guidelines was 121 to 151 months. From the high end of the range, the Court departed upward by 60 months.

Johnny Lee Evans raises a number of arguments on appeal. Of these arguments, several also were made by Derry Evans or Terrance Roberts, including that: (1) various of the jurors' actions were misconduct and merit a mistrial; and (2) the District Court gave conflicting jury instructions on the mental element for money laundering, resulting in the omission of the element of knowledge that the money being transferred constituted the proceeds of an illegal activity. For the reasons discussed previously, these arguments are without merit.

Like Derry, Johnny Lee argues that the District Court erred in determining that the evidence was sufficient to support his conviction for conspiracy to transport an individual in interstate commerce to engage in prostitution. Specifically, he contends that the evidence was insufficient to establish an agreement among the defendants. However, when the evidence is viewed in the light most favorable to the government,

see Jackson, 443 U.S. at 319, the trial revealed sufficient evidence of an agreement to violate the law. For example, Brenda Schaper, one of LeVorn's prostitutes, testified that she and Shelly Kruse and Sherry Berndt, two of Johnny Lee's prostitutes, participated in "two-girl calls," and that LeVorn and Johnny Lee shared the proceeds. Tonya May, one of LeVorn's prostitutes, testified that Johnny Lee encouraged her to start working as a prostitute for LeVorn, which she did. Ms. May also testified that she referred calls to Johnny Lee's prostitutes and received calls referred from his prostitutes, with Johnny Lee and LeVorn splitting the proceeds. Rosita Francis, one of Monroe's prostitutes, testified that Johnny Lee transported her from Minneapolis to Houston to work as a prostitute. Finally, Deanna Kirkman, one of Terrance Roberts's prostitutes, testified that Johnny Lee participated in the meeting about Julia Wilson's statement. This evidence suffices to uphold Johnny Lee's conviction of conspiracy to violate the Mann Act.

Like Derry and Monroe, Johnny Lee also contends that the District Court erred in determining that the evidence was sufficient to support his convictions for money laundering and conspiracy to commit money laundering. Citing United States v. Shoff, 151 F.3d 889 (8th Cir. 1998), and United States v. Herron, 97 F.3d 234, 236 (8th Cir. 1996), cert. denied, 519 U.S. 1133 (1997), Johnny Lee argues that the evidence was insufficient to establish that he concealed the ownership, source, or control of the money. Shoff, 151 F.3d at 891 ("A money laundering violation requires proof of concealment, not the absence of full disclosure."); Herron, 97 F.3d at 237 (noting that using wire transfers is insufficient to establish concealment and explaining that government cannot turn money laundering statute into "money spending statute"). Johnny Lee's argument fails for the same reasons that Monroe's argument fails: Tonya May testified that she was present for a conversation among Monroe, LeVorn, Clem, and Johnny Lee regarding funding the down payment on Alice Evans's house. Monroe then sent Julia Wilson to collect money from LeVorn and Johnny Lee, and, with Stacy Ballantyne, to purchase cashier's checks. They purchased four checks totaling $7000 and sent them to Alice Evans. The checks were

used for the down payment on Alice's house. Although money laundering is not simply money spending, the jury reasonably could have determined that the defendants used Julia Wilson to send the money to conceal the true owners and had her send multiple cashier's checks in small amounts to avoid detection. This evidence is sufficient to establish concealment. This evidence also suffices to establish conspiracy to launder money.

Like Derry and Monroe, Johnny Lee argues that the District Court erred in admitting evidence of his violent behavior as direct evidence of the conspiracy. Specifically, Johnny Lee contests the admission of evidence concerning numerous violent acts, including repeated beatings of Cheryl Buchheit and Sherry Berndt and fights between Johnny Lee and Shelly Kruse. He argues that this evidence is of domestic violence, not of violations of the Mann Act. For the reasons discussed above, these violent acts are relevant and probative of Mann Act violations because they describe actions taken to control and discipline prostitutes (regardless of whether Johnny Lee also had intimate relationships with his prostitutes). The Court did not abuse its discretion.

Johnny Lee next argues, like Derry, that the District Court erred in enhancing his base offense by four levels for being a leader or organizer. U.S. Sentencing Guidelines Manual § 3B1.1(a) (1998). We review for clear error. United States v. Ayers, 138 F.3d 360, 364 (8th Cir.), cert. denied, 525 U.S. 895 (1998). All five defendants were part of a criminal activity involving interstate transportation for prostitution. With regard to whether Johnny Lee was a leader, the fact that the prostitutes involved were victims and not participants does not lessen the depth of his involvement or the authority that he exercised. The evidence indicates his participation in the meeting concerning Julia Wilson's statement to the police. Tonya May testified that he recruited her to work for LeVorn. He provided money, along with LeVorn and Monroe, to fund his mother's purchase of a house. Moreover, Cheryl Buchheit testified that Johnny Lee hired a driver to take her on prostitution

calls, thereby satisfying the requirement that he be "the organizer, leader, manager, or supervisor of one or more other participants." U.S. Sentencing Guidelines Manual § 3B1.1, cmt. n.2 (1998). The District Court did not commit clear error in finding that he was a leader.

Johnny Lee also argues that the District Court erred in enhancing his base offense level for use of force or coercion pursuant to the Sentencing Guidelines. Section 2G1.1(b)(1), which relates to promoting prostitution or prohibited sexual conduct, provides: "If the offense involved the use of physical force, or coercion by threats or drugs in any manner, increase by 4 levels." The trial testimony reveals that Johnny Lee beat Sherry Berndt with a towel and a shoe, including beating her on the face and head. Cheryl Buchheit testified that Johnny Lee split the back of her head open and kicked her in the ribs. On another occasion, she had to be taken to the hospital because of damage to her ribs from one of Johnny Lee's beatings. Johnny Lee contends, again, that this conduct should not be considered because it was part of his domestic relationships. He is mistaken. Whether or not the violence was part of personal relationships between Johnny Lee and his prostitutes, it was also a part of the illegal conduct, and the District Court did not clearly err in considering it at sentencing.

Finally, like Terrance Roberts, Monroe Evans, and Clem Evans, Johnny Lee Evans argues that the District Court abused its discretion by granting the government's motion for an upward departure by 60 months based on U.S. Sentencing Guidelines Manual §§ 5K2.2 (significant physical injury) and 5K2.8 (extreme conduct). He again argues that the physical abuse that occurred took place in the context of a long-standing personal relationship. This is hardly an excuse. The evidence discussed previously regarding the violent beating of and injuries suffered by Sherry Berndt and Cheryl Buchheit is sufficient to find significant physical injury and extreme conduct. We conclude that the District Court did not abuse its discretion in departing upward.

## III. Conclusion

For the foregoing reasons, the judgments of the District Court are affirmed with respect to the defendants Derry Evans, Terrance Roberts, and Johnny Lee Evans. With respect to the other defendants, there was no error except for the Ex Post Facto Clause point the government now concedes. In the cases of defendants Monroe Evans and Clem Evans, the judgments are vacated, and the cases are remanded for resentencing. Defendants may not receive more than five years for the §§ 2421 and 2422(a) counts.

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.