UNITED STATES of America,
Plaintiff–Appellee,

v.

Julio GONZALEZ, Defendant–
Appellant.

No. 97–10520.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 14, 2000

Filed June 15, 2000

**1110**

Stephen Corrigan, Assistant United States Attorney, San Francisco, California, for the plaintiff-appellee.

Amitai Schwartz, Berkeley, California, for the defendant-appellant.

Before: POLITZ,[1] REINHARDT, and HAWKINS, Circuit Judges.

1. The Honorable Henry A. Politz, Senior United States Circuit Judge for the Fifth Circuit

REINHARDT, Circuit Judge:

Julio Gonzalez appeals from his conviction and sentence imposed for conspiracy, cocaine distribution, and money laundering. On appeal, Gonzalez raises four principal issues. He contends that the district court erred by: 1) overruling his challenge for cause to a juror; 2) barring him from presenting evidence going to a defense of duress and refusing to instruct the jury on duress; 3) deciding a material element of the money laundering scheme as a matter of law-namely, whether a federally run sting operation qualifies as a financial institution for purposes of the money laundering counts; and 4) admitting the testimony of an accomplice who testified in exchange for government leniency. While we find the second and third issues troubling, we reverse on the basis of the first.

## FACTUAL BACKGROUND

At the time of the events in question, Julio Gonzalez was 48 years old, with a wife and young child. He operated a neighborhood travel agency in San Francisco's Mission District and worked as a Spanish language radio announcer for the San Francisco Giants. Several character witnesses testified at trial that they never knew Gonzalez to use drugs or to act dishonestly. Gonzalez was accused of conspiracy to distribute cocaine, cocaine distribution, and money laundering in violation of 21 U.S.C.A. §§ 841, 846, and 18 U.S.C.A. § 1956.

During jury selection, the district court asked the prospective jurors whether they or anyone to whom they were close had any experience with illegal drugs. Among those who responded affirmatively was juror Camacho, who subsequently told the court that her ex-husband, the father of her five year old daughter, had both used and dealt cocaine during their marriage. His involvement in drug trafficking was, she testified, one of the reasons for their

Court of Appeals, sitting by designation.

divorce approximately four years earlier. Upon questioning by the court, Camacho admitted that the experience was a painful one. At that point, apparently concerned by her answers, the district judge asked her three times whether she could put her personal experience aside and serve impartially. Each time, she responded equivocally:

> The Court: Do you think you can put that aside and view Mr. Gonzalez fairly, and view the government's case fairly?
>
> Camacho: I will try to.
>
> The Court: Okay. Well, any—any doubt in your mind about that? I mean, that's—that's pretty—a case of drugs being pretty close and touching your life. But again you're not being asked to rehash those problems, you're not being asked to decide whether drugs are good or bad. You're just going to hear evidence as to whether Mr. Gonzalez did or did not deal with drugs.
>
> Camacho: Right. I'll try.
>
> The Court: Do you think you can do that fairly?
>
> Camacho: I'll try.

Camacho never stated affirmatively that she could put aside her personal experiences, nor did she ever state that she could be fair or impartial.[2]

At sidebar, Gonzalez's counsel moved to have Camacho excused for cause, noting, in addition to her equivocal responses and the emotionally fraught issue of her ex-husband's drug problem and activities, what he termed "negative body language" when he asked the pool as a whole whether anyone would have a problem following the reasonable doubt or entrapment instructions. Although the district court

conceded that Camacho's answers were "a bit equivocal," it denied counsel's motion, holding that counsel's observations about her demeanor coupled with her responses were "not enough to excuse her." Originally an alternate, Camacho became a member of the regular panel over the defense's objection after another juror was excused.

Gonzalez was found guilty on all counts by the jury and was sentenced to ten years in prison and five years of supervised release. This appeal followed.

### ANALYSIS

■ The Sixth Amendment guarantees criminal defendants a verdict by an impartial jury. *Dyer v. Calderon,* 151 F.3d 970, 973 (9th Cir.1998). The bias or prejudice of even a single juror is enough to violate that guarantee. *Id.* Accordingly, "[t]he presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice." *Dyer,* 151 F.3d at 973, n. 2; *see also United States v. Martinez–Salazar,* — U.S. —, —, 120 S.Ct. 774, 782, 145 L.Ed.2d 792 (2000) ("Nor did the district court's ruling result in the seating of any juror who should have been dismissed for cause. As we have recognized, that circumstance would require reversal.").

■ Challenges for cause are the means by which partial or biased jurors should be eliminated. To disqualify a juror for cause requires a showing of either *actual* or *implied* bias—"that is ... bias in fact or bias conclusively presumed as a matter of law." 47 Am.Jur.2d Jury § 266 (1995). Although "[b]ias can be revealed by a juror's express admission of that fact, ... more frequently, jurors are reluctant

---

**2.** Camacho was subsequently approached during the trial by a man who tried to talk to her about her jury service and the possible sentence Mr. Gonzalez would receive if convicted. After she reported the incident to the district judge, he allowed both sides to question her. The government asked the following (leading) question: "I'm assuming that these comments that were made to you would

not have an impact upon your ability to be fair and impartial ... is that correct?" Camacho responded: "Correct." Thus, Camacho squarely rejected the possibility that the attempted jury tampering would have an effect on her, something she failed to do with respect to her ex-husband's drug dealing and addiction.

to admit actual bias, and the reality of their biased attitudes must be revealed by circumstantial evidence."[3] *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir.1977). Because determinations of impartiality may be based in large part upon demeanor, this court typically accords deference to the district court's determinations, and reviews a court's findings regarding actual juror bias "for manifest error" or abuse of discretion. *See United States v. Alexander*, 48 F.3d 1477, 1484 (9th Cir.1995). In contrast, implied bias presents a mixed question of law and fact which is reviewable de novo. *Dyer*, 151 F.3d at 979.

■ In essence, "[a]ctual bias is 'bias in fact'—the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *United States v. Torres*, 128 F.3d 38, 43 (2nd Cir.1997). Accordingly, courts have found actual bias where, based upon personal experience, a potential juror stated he could not be impartial when evaluating a drug dealer's testimony, *Torres*, 128 F.3d at 44, where a juror in a case involving embezzlement from a labor union emphasized his negative experiences with unions and responded equivocally when asked if he could render a fair and impartial verdict despite those views, *United States v. Nell*, 526 F.2d 1223, 1228–29 (5th Cir. 1976), and where a juror in a drug distribution case admitted to a conviction for marijuana possession, but stated that he believed it to have been the product of entrapment, *United States v. Gonzalez–Balderas*, 11 F.3d 1218, 1222 (5th Cir. 1994).

■ Although actual bias is the more common ground for excusing jurors for cause, "[i]n extraordinary cases, courts may presume bias based upon the circumstances." *Dyer*, 151 F.3d at 981; *see also Smith v. Phillips*, 455 U.S. 209, 222, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (O'Connor, J., concurring). "Unlike the inquiry for actual bias, in which we examine the juror's answers on voir dire for evidence that she was in fact partial, 'the issue for implied bias is whether *an average person in the position of the juror in controversy* would be prejudiced.'" *United States v. Cerrato–Reyes*, 176 F.3d 1253, 1260—61 (10th Cir.1999) (emphasis added) (quoting *Torres*, 128 F.3d at 45). Accordingly, we have held that prejudice is to be presumed "'where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances.'" *Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir.1990) (quoting *Person v. Miller*, 854 F.2d 656, 664 (4th Cir.1988)). We have also stated that the relevant question "is whether '[the] case present[s] a relationship in which the "potential for substantial emotional involvement, adversely affecting impartiality," is inherent.'" *United States v. Plache*, 913 F.2d 1375, 1378 (9th Cir.1990) (quoting *Tinsley*, 895 F.2d at 527) (in turn, quoting *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979)).

Applying this standard, we have found implied bias in cases where the juror in question has had some personal experience that is similar or identical to the fact pattern at issue in the trial or where the juror is aware of highly prejudicial information about the defendant. *See Tinsley*, 895 F.2d at 527–29 (cataloguing cases in which implied bias has been found). For example, in *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir.1979), this court found implied bias where the sons of a juror in a heroin distribution case were themselves heroin users and had served lengthy prison sentences. Similarly, in *Dyer*, we found implied bias where the brother of a juror

---

**3.** In determining whether a district court has abused its discretion in refusing to remove a juror for actual bias, this court accords significant weight to a juror's definitive statement that he can serve impartially. *See United States v. Daly*, 716 F.2d 1499, 1507 (9th Cir.

1983). Nevertheless, "the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights...." *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).

in a murder case had been murdered and the juror did not reveal this fact on voir dire because she did not believe it to be relevant.[4] *Dyer*, 151 F.3d at 981–82. We also take note of recent precedent from other Circuits. In *Hunley v. Godinez*, 975 F.2d 316, 319–20 (7th Cir.1992), the Seventh Circuit found implied bias in a trial for murder and burglary when the hotel rooms of the deliberating jurors were broken into. The Seventh Circuit based its conclusion on the assumption that the recent burglary would make the jurors incapable of fairly deliberating in a case in which the murder was committed in connection with a burglary. Similarly, in *Burton v. Johnson*, 948 F.2d 1150, 1159 (10th Cir.1991), the Tenth Circuit found implied bias in a case in which both the juror and the defendant had been involved in abusive family situations.

■■■■ Because the implied bias standard is essentially an objective one, a court will, where the objective facts require a determination of such bias, hold that a juror must be recused even where the juror affirmatively asserts (or even believes) that he or she can and will be impartial. *See Dyer*, 151 F.3d at 982 ("Even if the putative juror swears up and down that it will not affect his judgment, we presume conclusively that he will not leave [it] . . . at the jury room door."). However, a juror's statements that reflect a *lack* of impartiality may be relevant to a determination of implied bias. A juror's responses that cast doubt upon his ability or willingness to serve impartially will be considered along with the relevant objective factors in determining whether implied bias exists. *Dyer*, 151 F.3d at 984 (holding that juror's responses and conduct, in combination with her personal history, "add[ed] up to that rare case where we must presume juror bias"); *Burton*, 948 F.2d at 1159.

On appeal, Gonzalez argues that the district court was obligated to excuse Camacho for cause under either an implied or express bias theory. In response, the government contends that neither implied nor express bias existed. It argues that Camacho should simply be considered as one of the many people who know someone who has used or sold drugs, and not someone who is subject to challenge for cause. We disagree.

■■■■ In this case, Camacho disclosed the fact that her ex-husband, the father of her daughter, dealt and used cocaine—the same drug and conduct at issue here. Moreover, she described her former husband's drug dealing as one of the reasons for her relatively recent divorce and the break-up of her family. She admitted that the experience was painful. Asked three times whether she could put that experience aside and serve fairly and impartially, she never affirmatively stated that she could. Instead, she equivocated each time.[5]

In *Alexander*, 48 F.3d at 1483–84, this court held that the trial judge did not

---

4. For additional examples of cases in which courts have found implied bias, *see, e.g., Willie v. Maggio*, 737 F.2d 1372, 1379–81 (5th Cir.1984) (collecting cases where jurors were apprised of highly prejudicial information); *Burton v. Johnson*, 948 F.2d 1150, 1158–59 (10th Cir.1991); *Allsup*, 566 F.2d at 71–72 (prospective jurors who worked for the bank that had been robbed should have been excused, even though they did not work at the particular branch which was robbed); *Nell*, 526 F.2d at 1229 (juror belonged to a labor union that had fought with the union victimized by the defendant); *Jackson v. United States*, 395 F.2d 615, 617–18 (D.C.Cir.1968) (juror previously involved in love triangle similar to the one at issue at trial); *United States*

*ex rel. De Vita v. McCorkle*, 248 F.2d 1, 8 (3d Cir.1957) (en banc) (juror a robbery victim and defendant was charged with robbery).

5. Despite the government's best efforts to characterize the response "I'll try" as unequivocal, we cannot agree, particularly in light of the district court's own characterization of her responses as uncertain. If a parent asks a teenager whether he will be back before curfew, that parent is highly unlikely to find "I'll try" an adequate, satisfactory, or unequivocal response. Moreover, Camacho never deviated from that initial uncertain response despite the district court's repeated questioning.

abuse his discretion or commit manifest error in denying a challenge for cause to two jurors who *initially* gave equivocal answers when asked if they could be fair and impartial. In that case, the first juror, who had been held up at gunpoint five years earlier, initially responded somewhat equivocally, saying that he "believed" that he could be impartial, but then responded affirmatively that he could be fair in a case involving facts similar to his case. *Id.* A closer question for the court was the issue of the second juror, whose husband had been held up at gunpoint four years before; asked twice, she gave somewhat less direct responses: in answer to the question whether her husband's experience would keep her from serving impartially, she said "I don't believe so, no." *Alexander*, 48 F.3d at 1484. In response to the next question, asking whether she could set aside her feelings and act impartially, she replied "I believe so, yes." *Alexander*, 48 F.3d at 1484. The key is that in each instance, following her introductory statement of "belief," the second juror ended her answer with an unqualified affirmative or negative, whichever was appropriate for purposes of indicating her ability to serve impartially. Thus, ultimately, the second *Alexander* juror, like the first, declared that she could be fair and impartial.

Here, however, Camacho was asked *three* times whether she could be fair, and each time she responded equivocally. Not *once* did she affirmatively state that she could or would serve fairly or impartially. Equally important, the potential source of bias in this case is also very different than in *Alexander*. Here, as opposed to a single, isolated criminal incident, Camacho was married to and lived with someone who both bought and sold cocaine on a regular basis, bore that person a child, and then divorced him on account of his involvement with drugs, all within approximately five years of sitting on the jury. The activities of Camacho's husband which led to her divorce and the break-up of her family resembled the fact pattern at issue in the case in which she served—a case in which, if the government's charges were true, the defendant had endangered his family's safety and security in order to traffic in cocaine. Her responses to the repeated questions about her ability to be impartial in light of her own traumatic experiences were consistently equivocal, and she displayed some discomfort during the questioning. In light of these facts, we are compelled to conclude that in this case "the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *See Tinsley*, 895 F.2d at 527.

A juror is considered to be impartial "only if he can lay aside his opinion and render a verdict based on the evidence presented in court...." *Patton v. Yount*, 467 U.S. 1025, 1037 n.12, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). "Doubts regarding bias must be resolved against the juror." *Burton*, 948 F.2d at 1158. When a juror is unable to state that she will serve fairly and impartially despite being asked repeatedly for such assurances, we can have no confidence that the juror will "lay aside" her biases or her prejudicial personal experiences and render a fair and impartial verdict. Given Camacho's responses to the court's questions and the similarity between her traumatic familial experience and the defendant's alleged conduct, we conclude that the failure to excuse her for cause under either an express or implied bias theory requires reversal.

Accordingly, we reverse and remand for a new trial.[6]

REVERSED AND REMANDED.

---

**6.** Gonzalez also argues that the district court erred in refusing to instruct the jury regarding his duress defense. Gonzalez points to the evidence that he contends the district court erroneously excluded-namely, the testi-

mony of Doctors Chernick and Ghannam, as well as that of Gonzalez's wife regarding her brother-in-law's murder at the hands of Colombian narcotics traffickers. Although we find considerable merit in Gonzalez's arguments, *see United States v. Contento–Pachon*, 723 F.2d 691 (9th Cir.1984); *see also United States v. Sotelo–Murillo*, 887 F.2d 176, 178 (9th Cir.1989); *United States v. Escobar de Bright*, 742 F.2d 1196, 1201 (9th Cir.1984), we need not reach this issue because of our holding with respect to juror bias and because the record at any future proceeding may well be different.

Gonzalez's next argument is that the district court erred in deciding as a matter of law that Interfax was a financial institution as defined by the money laundering statute and that that error was not harmless. *See United States v. Gaudin*, 515 U.S. 506, 511, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); *see also Neder v. United States*, 527 U.S. 1, 20, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (falsehood is material element of crime of federal mail fraud, 18 U.S.C. § 1341 and should be decided by jury). Again, in light of our holding on the juror question, we need not decide whether, assuming that the district court did err (which we think likely), the error was harmless. We note, however, that the government's admission at trial that it had not introduced *any* evidence that Interfax was a financial institution engaged in banking or lending which affects interstate or foreign commerce within the meaning of the statute suggests that it may well have been prejudicial. The government argues in this regard that, because the jury might have relied on an alternate (legitimate) ground, the error, if any, was, in any event, harmless. Although we do not decide this question, we note "[t]he fundamental rule that applies when a jury delivers a general verdict that may rest either on a legally valid or legally invalid ground is clear: the verdict may not stand when there is no way to determine its basis." *Keating v. Hood*, 191 F.3d 1053, 1062 (9th Cir.1999) (citing *Sandstrom v. Montana*, 442 U.S. 510, 526, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), *Yates v. United States*, 354 U.S. 298, 312, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), *overruled on other grounds, Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)). Although there is a limited exception to this strict principle where it "is *absolutely certain*" that the jury relied upon the legally correct theory, in this case, there is no way to tell which definition the jury relied on in reaching its decision, and it is far from "absolutely certain" that the jury relied upon the legally correct theory in reaching its verdict. *See Ficklin v. Hatcher*, 177 F.3d 1147, 1151 (9th Cir.1999) (emphasis added).

As for Gonzalez's final contention, namely, that the district court erred in admitting the testimony of an accomplice who testified in exchange for government leniency, we squarely rejected that argument in a recent Ninth Circuit case, *United States v. Mattarolo*, 209 F.3d 1153, 1160 (9th Cir.2000); *see also United States v. Flores*, 172 F.3d 695, 699–700 (9th Cir.1999) (collecting cases holding that Section 201(c)(2) does not apply to the government).