**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-50242 |
| Plaintiff–Appellee, | D.C. No. 2:20-cr-00148-GW-1 |
| v. | |
| ALBERT PINEDO, | MEMORANDUM[*] |
| Defendant–Appellant. | |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted January 10, 2024
Pasadena, California

Before: CALLAHAN and BENNETT, Circuit Judges, and KATZMANN,[**] Judge.
Dissent by Judge BENNETT.

Defendant–Appellant Albert Pinedo appeals the district court's judgment of

conviction for one count of attempted enticement of a minor in violation of 18

U.S.C. § 2422(b). We have jurisdiction under 28 U.S.C. § 1291. We affirm.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Gary S. Katzmann, Judge for the United States Court
of International Trade, sitting by designation.

In February 2020, Pinedo published a post on Craigslist looking for a sexual encounter. Special Agent Paul Radlinski responded to his post as a fictitious 14-year-old named "Robby." The two soon made plans to meet and arranged for Pinedo to bring a sex toy and bottle of lubricant to the scene. Upon his arrival, law enforcement arrested Pinedo. They also photographed and collected the sexual accoutrements. In March 2020, Pinedo was indicted of one count of attempted enticement of a minor to engage in oral copulation and lewd and lascivious acts with a child, as prohibited under California Penal Code sections 287(b)(2) and 288(c)(1), under 18 U.S.C. § 2422(b).

The defense's theory of the case was that Pinedo was engaged in a consensual fantasy with another adult roleplaying as a minor named "Robby." Following trial, the jury convicted Pinedo. He was sentenced to ten years followed by five years of supervised release. Pinedo timely appealed.

1.      Pinedo first appeals the district court's denials of his for-cause challenges to two jurors. Pinedo argues that Jurors 17 and 30 repeatedly expressed actual biases against the subject matter of the case, including Pinedo's anticipated defense of adult roleplay involving minors in fantasy, and that they never unequivocally stated they could be fair and impartial as required by the Sixth Amendment of the U.S. Constitution. We review rulings on actual bias for "manifest error or abuse of discretion." *United States v. Gonzalez*, 214 F.3d 1109,

1112 (9th Cir. 2000). When reviewing claims of actual bias, "the deference due to district courts is at its pinnacle." *Skilling v. United States*, 561 U.S. 358, 396 (2010).

Pinedo's trial in July 2021 was among the first in the Central District of California since the suspension of trials in March 2020 due to the Covid-19 pandemic. *See* C.D. Cal. General Order 21-08 (June 11, 2021). Jury selection proceeded differently than usual. Prospective jurors first reviewed a statement of the case and each privately filled out a 69-question form, which was formulated by the parties and included questions specific to the case. The questionnaires included four questions addressing the prospective juror's commitment to impartiality. Each prospective juror was required to sign under penalty of perjury and declare that all their answers were true and correct to the best of their knowledge.

Several prospective jurors were dismissed for cause based solely on the questionnaire responses. The remaining prospective jurors were then called into the courtroom one by one and stood at the lectern. The district court was on the bench, and counsel for Pinedo and the Government sat at counsel table. They each took turns asking prospective jurors about their written answers, as if being cross-examined. Both Jurors 17 and 30, and at least one other prospective juror, exhibited nervousness when answering questions.

The district court did not abuse its discretion in empaneling Juror 17. After commenting in the jury questionnaire that the subject matter was "disturbing" for a "father of two young children," he nonetheless answered three times that he would be impartial. "Jurors are human, so we do not demand that they pledge impartiality with complete certainty." *United States v. Kechedzian*, 902 F.3d 1023, 1030 n.2 (9th Cir. 2018). Juror 17 later stated during voir dire that "I would like to think I could" put personal feelings aside and that "I would let him know that as a citizen of this country, I would do my best to try to be as impartial as I can be." Those statements clear the threshold set by our precedent. *See Gonzalez*, 214 F.3d at 1111 (reversing for "I'll try"); *Kechedzian*, 902 F.3d at 1029 (reversing for "I might be able to put that aside," "I would want to put my personal stuff aside, but I honestly don't know if I could," and "I would try to be fair").

Nor was the decision to empanel Juror 30 an abuse of discretion. To be sure, Juror 30 made equivocal statements during voir dire. She said that "[i]t would be" difficult to look at charges involving minors without being biased and that she "[p]robably . . . wouldn't be a good juror." And she repeatedly answered that she would "try [her] best" to be impartial. Equivocal statements, by themselves, do not satisfy the Sixth Amendment. *See Kechedzian*, 902 F.3d at 1029 (reasoning that the juror "never affirmatively stated that she could be impartial"); *Gonzalez*, 214 F.3d at 1111 (explaining that the juror "never stated affirmatively that she could

4                                                                                    21-50242

put aside her personal experiences, nor did she ever state that she could be fair or impartial").

But Juror 30 did make an unequivocal commitment to be impartial—three times, like Juror 17—in her juror questionnaire. The district court "agree[d]" with the prosecutor that during voir dire "there were a handful of leading questions both ways and [Juror 30] would respond accordingly, but . . . ultimately there is no reason to think her written questionnaire [sic] she stepped off of that position in any meaningful way." The record supports that conclusion. Juror 30 on voir dire faced tough questions from the prosecution, defense, and district court, as if being cross-examined. Among her answers were "I don't know what to say," and "Why are you guys pressuring me[,] I don't know what to say." The intensity of her questioning provides context for her relative equivocation during voir dire, like the statement that she "[p]robably . . . wouldn't be a good juror."

The Sixth Amendment right to an impartial jury is inviolable. The presence of even one biased juror cannot be harmless. *See Gonzalez*, 214 F.3d at 1111. While our review of claims of juror bias must be careful, we are also mindful of the "repeatedly emphasized" principle that jury selection "is particularly within the province of the trial judge." *Skilling*, 561 U.S. at 386 (internal quotation marks and citations omitted). In this case, the district court was best situated to assess the totality of Juror 30's questionnaire responses and voir dire statements, having

observed her tone, body language, and demeanor in the courtroom. *See*

*Kechedzian*, 902 F.3d at 1027. It was not "manifest error" for the district court to

determine that her statements during voir dire were the result of intense

questioning rather than a genuine departure from impartiality.[1] *Gonzalez*, 214 F.3d

---

[1] The dissent states that the district court's conclusion, agreeing with the prosecution, "that Juror 30's voir dire responses were no different 'in any meaningful way' from her questionnaire answer that she could be fair and impartial is clearly factually erroneous." Dissent at 6–7. We are not so persuaded of that singular reading. The district court's reference to "any meaningful way" still coheres with the conclusion that some of Juror 30's answers were better understood as responses to leading questions from counsel, rather than as genuine departures from impartiality.

The dissent also states that portions of Juror 30's voir dire were contradictory and that the district court acknowledged those contradictions by saying to Juror 30, "you don't think you could be fair." *See id.* But jurors "cannot be expected invariably to express themselves carefully or even consistently." *Skilling*, 561 U.S. at 397 (quoting *Patton v. Yount*, 467 U.S. 1025, 1040 (1984)). Moreover, the district court's quoted statement is better read as an attempt to understand Juror 30's commitment to impartiality, rather than an acknowledgement of her bias. The exchange reads:

> THE COURT: Well, let me ask you, you don't think you could be fair, is it a possibility you could be fair?
>
> PROSPECTIVE JUROR: I will try my best.
>
> THE COURT: Okay. And you will try to follow the Court's instructions on the law; is that correct?
>
> PROSPECTIVE JUROR: Yes.

That exchange on the cold record illustrates the broader point. The prosecution, defense counsel, and the district court all acknowledged that Juror 30 was under pressure. But from where we sit now, we have only the cold record. "It is here

at 1112.  Where, as here, our deference to that determination is at its "pinnacle," *Skilling*, 561 U.S. at 396, we conclude that the decision to empanel Juror 30 was not an abuse of discretion.

2.     Pinedo next appeals the district court's denial of his motion in limine to exclude the testimony of Detective Wayne Nichols, the Government's expert witness on internet crimes against children and related investigations.  Pinedo argues that the Nichols's expert testimony was erroneously admitted because it (1) addressed matters the average juror could have understood and (2) improperly bolstered the credibility of Agent Radlinski's testimony.  "We review a district court's admission of expert testimony or lay opinion testimony for abuse of discretion."  *United States v. Rodriguez*, 971 F.3d 1005, 1017 (9th Cir. 2020).

Admitting the testimony was not an abuse of discretion.  Nichols offered specialized knowledge on the modus operandi of online pedophiles and on the law enforcement investigations of internet crimes against children, and it was reasonable to determine that his knowledge was outside the jury's common knowledge.  *See United States v. Valencia-Lopez*, 971 F.3d 891, 901 (9th Cir. 2020); *United States v. Brooks*, 610 F.3d 1186, 1196 (9th Cir. 2010).  Nor did

---

that the federal appellate court's deference must operate, for while the cold record arouses some concern, only the trial judge could tell which of these answers was said with the greatest comprehension and certainty." *Skilling*, 561 U.S. at 398 (quoting *Yount*, 467 U.S. at 1040).

Nichols's testimony unlawfully bolster Radlinski's testimony. It was Pinedo who questioned the investigation's adequacy in an attempt to show that he lacked criminal intent of meeting an actual minor rather than a roleplaying adult. Nichols offered expert testimony to rebut Pinedo's assertion of an inadequate investigation, *cf. United States v. Rivera*, 43 F.3d 1291, 1295 (9th Cir. 1995), and did not improperly comment on the specific facts of this case or on Radlinski's performance as an investigator. *See Tekoh v. County of Los Angeles*, 75 F.4th 1264, 1266 (9th Cir. 2023). Finally, any error would have been harmless. A wealth of other email and circumstantial evidence supported Pinedo's criminal intent.

3. Pinedo next challenges the district court's denial of his motion to exclude physical exhibits of the sex toy and bottle of lubricant, which he argues are unduly prejudicial and needlessly cumulative under Federal Rule of Evidence 403. We review evidentiary rulings for abuse of discretion, *see United States v. Martin*, 796 F.3d 1101, 1105 (9th Cir. 2015), and Rule 403 rulings in particular are subject to "great deference" to the district court. *United States v. Hinkson*, 585 F.3d 1247, 1267 (9th Cir. 2009) (en banc).

Admitting the physical evidence was not an abuse of discretion. The photographs of the sex toy and bottle of lubricant were admitted into evidence without challenge on appeal. Because the difference in probative value and in

undue prejudice between the photographic and physical evidence is minimal, the district court's decision was not "beyond the pale of reasonable justification under the circumstances." *United States v. Espinoza-Baza*, 647 F.3d 1182, 1189 (9th Cir. 2011). Moreover, any error would have been harmless. The district court limited the Government to a "mere showing of the items" and warned against any "untoward comment," and the Government did not emphasize the physical exhibits in a way that would have enflamed the jury any more than the photographs would have.

4. Finally, Pinedo argues that the district court erred in giving the wet-sidewalk example of circumstantial evidence in Ninth Circuit Model Criminal Jury Instruction 1.5 because that instruction improperly shifts the burden of proof in criminal cases to the defendant. The district court issued the following instruction before the parties gave their opening statements at trial:

> By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide an explanation for the water on the sidewalk. Therefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

We review jury instructions that are challenged as "incorrect statement of law" de novo. *United States v. Redlightning*, 624 F.3d 1090, 1122 (9th Cir. 2010).

21-50242

The jury instruction accurately states the law and is not otherwise misleading. The instruction does not incorrectly suggest that only one inference may be derived from the fact of a wet sidewalk. The first sentence states that the juror "*may* find from that fact that it rained during the night." The second sentence then makes clear that competing inferences may be drawn from the fact of a wet sidewalk in light of other facts, "such as a turned-on garden hose." Nor could a juror reasonably have understood the instruction to shift the burden of proof to the defendant, *see Sandstrom v. Montana*, 442 U.S. 510, 523–24 (1979), because the instruction makes no mention of burdens of proof or default conclusions. Finally, any potential ambiguity in the instruction would have been harmless; the district court and all parties explained to the jury, at least six times, that the Government bears the burden of proof.

**AFFIRMED.**

*United States v. Albert Pinedo*, No. 21-50242

BENNETT, Circuit Judge, dissenting:

I would reverse and remand for a new trial, as I believe the district court erred in rejecting Pinedo's for-cause challenges to Juror 30.[1] The Sixth Amendment guarantees "trial, by an impartial jury" because "trial by jury in criminal cases is fundamental to the American scheme of justice." *Duncan v. Louisiana*, 391 U.S. 145, 149, 153 (1968). The presence of "[i]mproper influence or bias of a single juror" impermissibly affects a criminal defendant's right to a trial by impartial jurors. *United States v. Simtob*, 485 F.3d 1058, 1064 (9th Cir. 2007). Pinedo alleges Juror 30 expressed significant disqualifying bias against him during jury selection. The district court found no disqualifying bias, and the majority agrees. But the district court abused its discretion when it made a clear material factual error in its statement of why it was rejecting the challenge to Juror 30. This error so infected the court's "no disqualifying bias" determination that we cannot affirm that determination. The inclusion of Juror 30 as a member of the jury panel despite her unambiguous bias resulted in a clear violation of Pinedo's Sixth Amendment rights. Because of that, Pinedo is entitled to a new trial. Thus, I respectfully dissent.

"[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).

---

[1] I agree with the remainder of the majority's disposition.

1

"The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Id.* (citing *In re Oliver*, 333 U.S. 257 (1948); *Tumey v. Ohio*, 273 U.S. 510 (1927)). A foundational principle "of the law is that a juror who has formed an opinion cannot be impartial." *Reynolds v. United States*, 98 U.S. 145, 155 (1878). It is true that "[b]ecause determinations of impartiality may be based in large part upon demeanor, this court typically accords deference to the district court's determinations." *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000). However, "[r]ulings on actual bias are reviewed for manifest error or abuse of discretion," and "[a] district court abuses its discretion when it[] bases a decision 'on an erroneous legal standard or a clearly erroneous finding of fact.'" *United States v. Kechedzian*, 902 F.3d 1023, 1027 (9th Cir. 2018) (quoting *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012)).

On her juror questionnaire, Juror 30 answered "no" to the following question:

Given the nature of the charge against the defendant, do you hold any strong opinions or convictions that you believe would prevent you from being a fair juror and/or following the instructions as the Court gives them in this case?

The Juror answered "yes" to the following question:

The jurors who hear this case will be instructed that they must base their verdict solely on the evidence presented in court, and not on sympathy, passion or prejudice. Will you be able to follow this instruction?

The Juror also answered "yes" to this question:

2

Do you feel that you could be a completely fair and impartial juror to both the Defendant and the Government in this case?

One answer, however, raised concerns in the mind of the district court and defense counsel:

> [Question:] You may hear evidence about how individuals with a sexual interest in minors engage in coping strategies (including engaging in role-playing) in order to avoid illicit sexual activity. Do you have any strong beliefs or convictions about whether it is appropriate for individuals with a sexual interest in minors to engage in coping strategies such as fantasy?
>
> [Answer:] Yes. Adult should <u>not</u> be engage[d] in coping strategies such as fantasy with minors. (emphasis in original).[2]

The district court understandably asked Juror 30 about her answer:

> There is an important distinction between fantasies with minors; in other words, fantasies involving minors and fantasies about minors. In other words, if somebody has a fantasy and doesn't do any physical actions or take any steps to do anything about it, but just has fantasies, that might very well be distasteful but that may not be a violation of the law. Do you understand that?

Juror 30 responded that she now understood the distinction. She then stated that she didn't think there was anything that would prevent her from being completely fair and impartial to both sides. If this were the end of the Juror 30 voir dire, then I would agree with the majority. But this was not the end.

---

[2] The juror also answered "Yes," to this question: "Is there anything that you would like to bring to the Court's attention that might, in any way, affect your ability to be a fair and impartial juror in this case or otherwise to serve as a juror?"

Defense counsel asked Juror 30 if she had "strong feelings" about "[o]ne of the adults [in this case] pretending to be a child." Echoing her questionnaire answer, Juror 30 stated: "I don't think adults should be . . . [w]ell, a child is so innocent, why would you want to think about kids – innocent kids like that?" She stated that she has "two teenagers" and "nieces and nephews" and she "d[id] not want people to see them and fantasize about that." Then, when asked whether, given those feelings, if she thought it would be difficult for her to be fair, Juror 30 responded, "I don't know."

When asked if she thought she would be able to have an open mind or if the case subject was "just too strong for [her] to . . . put aside [her] feelings," Juror 30 responded, "Honestly, I think it's too strong for me to." Defense counsel then asked whether just based on the charge itself, would Juror 30 be able to put those feelings aside, and Juror 30 said, "I will try to, but I don't know." After previewing the evidence to be introduced at trial, defense counsel *again* asked Juror 30 to confirm that "it would be difficult for [her] to look at charges like that without being biased; is that right?" Juror 30 stated: "*It would be yes. I would think so.*" (emphasis added). Juror 30 also said, "Probably I wouldn't be a good juror."

The district court then tried to rehabilitate Juror 30. The court stated, "*[Y]ou don't think you could be fair*, is it a *possibility* you could be fair?"[3] (emphasis added). Juror 30 responded, "I will try my best."[4] The government also tried to rehabilitate Juror 30, referring to her written questionnaire and asking Juror 30 if she still felt she could reach a verdict based on the evidence. Juror 30 replied, "Why are you guys pressuring me. I don't know what to say." Juror 30 concluded with the equivocal statement that she would "try [her] best."

The court then heard for-cause challenges to the prospective jurors. Defense counsel moved to exclude Juror 30 for cause, because "she said her initial response was she didn't think she could be fair. And then in response to further questioning, she said . . . I feel like you guys are pressuring me, I will try my best." Defense counsel then noted that Juror 30's initial voir dire responses were that "she doesn't

---

[3] Of course, it does not matter whether there is a "possibility" a juror could be fair. No case holds that the *possibility* a juror could be fair satisfies the Sixth Amendment. *See Kechedzian*, 902 F.3d at 1029, 1031 (reversing and remanding for a new trial where a juror stated that she "might be able to" put aside her feelings, she would "want to put [her] personal stuff aside, but [she] honestly [didn't] know if [she] could," and she "would try to be fair," because those statements were equivocal).

[4] We have repeatedly rejected similar answers after concluding they were equivocal. *See Kechedzian*, 902 F.3d at 1029 ("[A] response of "I'll try" is not an unequivocal statement"); *Gonzalez*, 214 F.3d at 1113 n.5 ("Despite the government's best efforts to characterize the response 'I'll try' as unequivocal, we cannot agree . . . . If a parent asks a teenager whether he will be back before curfew, that parent is highly unlikely to find 'I'll try' an adequate, satisfactory, or unequivocal response.").

think that she could be fair because of the nature of the evidence, because of her young children, and her young nieces and nephews." The prosecutor responded:

> For this juror it's important the questionnaire asked her, after giving her the nature of the case and so forth, ultimately the key questions which are 66, 67, and 68, she said she could be fair and impartial. I don't think the questioning in the jury – the time she was in here moved her from that position. I think there were a handful of leading questions both ways and she would respond accordingly, but I think that ultimately there is no reason to think her written questionnaire she stepped off of that position in any meaningful way.

With no further explanation, the district court stated, in response to the prosecutor's statement: "I agree. I will deny the for cause challenge." To be clear, the prosecutor stated that Juror 30 never moved from her position expressed in the written questionnaire that she could be fair and impartial; never stepped off that position in "any meaningful way," and the district court then explicitly agreed with that statement and denied the challenge for that reason. But the record makes clear the prosecutor's statement is simply wrong. The district court itself said to Juror 30 that "you don't think you could be fair" because of Juror 30's direct statement that the nature of the case was "just too strong for [her] to . . . put aside [her] feelings." When asked if it would be difficult for her "to look at charges like that without being biased," she replied: "It would be yes. I would think so . . . . Probably I wouldn't be a good juror." The district court's conclusion (agreeing with the prosecutor) that Juror 30's voir dire responses were no different "in any meaningful way" from her questionnaire answer that she could be fair and impartial is clearly factually

6

erroneous. The majority seems to recognize that when writing that "[t]o be sure, Juror 30 made equivocal statements during voir dire." Maj. at 4. And it is true that at the *beginning* of her questioning, Juror 30 said she didn't think there was anything that would prevent her from being fair and impartial. But after that, and several times, Juror 30 clearly contradicted that original statement, which even the district court explicitly recognized when it stated, "you don't think you could be fair." And again, the district court based its ruling rejecting the for-cause challenge on its agreement with the prosecutor's clearly incorrect factual statement. While the district court's decision is entitled to deference, that deference does not extend to the district court basing its decision on clearly erroneous facts.

The evidence against the defendant was overwhelming. But the "most priceless" safeguard for the preservation of "of individual liberty and of the dignity and worth of every man . . . is that of trial by jury." *Irvin*, 366 U.S. at 721. "This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies." *Id.* at 722. Regardless of the crime charged and the evidence against him, a defendant is entitled to a fair trial by an impartial jury. Because the district court empaneled a jury containing a biased juror it should have excused for cause, the defendant was denied his "most priceless" safeguard.

Thus, I respectfully dissent.